UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------X
CHRISTINE DOMINGUES,                          :
                                              :
                        Plaintiff,            :        Civil Action. No._____
                                              :
            v.                                :
                                              :
BARTON CHEVROLET CADILLAC,                    :
and RONALD BARTON,                            :
                                              :        **JURY TRIAL DEMAND**
                        Defendants.           :
                                              :
-------------------------------------------------------------X

## NATURE OF THE ACTION

        This is an action under federal and state anti-discrimination and anti-retaliation laws to correct unlawful employment practices in employment.  Plaintiff Christine Domingues complained of sexual harassment by a co-worker and was made to feel unsafe, and defendant employer and its owner retaliated against Domingues after she engaged in protected activity and made a series of complaints about unlawful harassment and retaliation.  In particular, defendants demoted Domingues, gave her inferior and substantially difficult and completely new physical job duties, which soon after resulted in a serious injury to Domingues. As charged with greater particularity below, defendant employer violated Title VII of the Civil Rights Act of 1964, and the New York Human Rights Law; Ron Barton, Barton Chevrolet's primary owner, actively participated in the retaliation and is also sued individually under the Human Rights Law.

## JURY DEMAND

        1.  Plaintiff Christine Domingues demands a trial by jury of all issues in this action.

**JURISDICTION, PARTIES AND VENUE**

2.   Jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§ 451, 1331, 1337, 1343 and 1345, and Title VII of the Civil Rights Act of 1964, as amended, 1990, 42 U.S.C. §2000e-5.

3.   The employment practices alleged to be unlawful were committed within the jurisdiction of the United States District Court for the Southern District of New York.

4.   Plaintiff Christine Domingues ("Domingues") resides in Middletown, New York, Orange County.

5.   At all relevant times, defendant Barton Chevrolet Cadillac ("Barton" or "BCC") has continuously operated as an employer as defined under Title VII and the Human Rights Law, has continuously had at least 15 employees.

6.   This Court has jurisdiction over this action pursuant to 42 U.S.C. §§ 2000e-(5), and 28 U.S.C. §1331, as this case arises under the laws of the United States.

7.   Venue is appropriate here, because the events about which plaintiff complains occurred where defendant Barton regularly conducts its business in Newburgh, New York, located in Orange County, New York.  This is the appropriate federal court location for actions that arise from acts in that Orange County location.

8.   All administrative prerequisites have been met as plaintiff filed a charge of discrimination with the Equal Employment Opportunity Commission against defendant Employer BCC.  She has satisfied the prerequisites under Title VII and received a Right to Sue Letter from EEOC.

9.   More than thirty days prior to the institution of this lawsuit, Domingues filed

charges with the Commission alleging violations by Barton.  All conditions precedent to the institution of this lawsuit have been fulfilled.

10. In addition, plaintiff brings an additional claim under New York State Executive Law §§296(1)(a) and §297, the Human Rights Law, alleging that defendants Barton Chevrolet Cadillac ("BCC") and Ronald Barton discriminated under the New York Human Rights.  Plaintiff has complied with the administrative prerequisites and on the agreement of the parties, received an adjournment for administrative convenience from the New York State Division of Human Rights on her claim against BCC, and brings this claim now in the first instance against defendant Ronald Barton.

11. As such, plaintiff requests that the court take supplemental jurisdiction of his claims under the Human Rights Law.  Such substantially overlap with those brought under Title VII.

## FACTS

12. Barton Chevrolet Cadillac or BCC, is a car dealership located at 800 Auto Park Place, Newburgh, New York.  Barton first hired Christine Domingues to work as a parts cashier on or about September 2016.

13. In that position, Domingues typically worked a schedule from 9:00 a.m. to 6:00 p.m.  Barton also permitted her to work as a parts cashier every other Saturday from 8:00 a.m. to 5:00 p.m., for which she received time and a half of overtime pay.  As a parts cashier, she performed the duties of interacting with customers, ringing up sales of parts and cashing out service customers, taking payments, and doing the daily cash deposits.  She worked in the new building of Barton's facility, with substantial contact with the sales force and the public.

14. While working in the parts cashier position, Domingues reported directly to

Robert Milkovich ("Milkovich") who was the Parts Manager.

15. In the beginning of May, 2017, a co-employee, Lucy DiCresce ("DiCresce"), began to make comments to Domingues about Domingues's breasts. DiCresce made unwanted sexual comments concerning Domingues's breasts such as "your breasts are too big for your body", "your boobs must be fake", "why do your boobs bounce around like that?"

16. DiCresce is a co-employee within the service department. DiCresce's job title is BDC.

17. At all times mentioned herein, DiCresce reported to Donald Mayer ("Mayer") whose job title is Service Manager.

18. Domingues first reported the unwanted comments and harassment directed toward her from DiCresce to Mayer, DiCresce's supervisor. Mayer stated he would talk to DiCresce concerning her behavior.

19. At all times mentioned herein, DiCresce's conduct was unwanted, offensive, sexual, and unreasonably interfered with claimant's ability to do her work.

20. Around the same time as her complaint to Mayer, Domingues also reported the unwanted harassing comments to her own immediate supervisor, Parts Manager Robert Milkovich. Milkovich stated that he would bring the problem to Donald Mayer ("Mayer") as Service Manager and DiCresce's supervisor.

21. On or about May 12, 2017, and after Domingues had made the above complaints to Mayer and Milkovich, DiCresce put one of her hands on Domingues's right breast and began shaking the breast up and down and poking it. At the same time Lucy grabbed Domingues's breast, she repeatedly made comments that "these cannot be real."

22. When DiCresce grabbed Domingues's breast, Domingues was humiliated and

4

demanded that DiCresce take her hands off of her.

23. The unwanted and offensive sexual touching was witnessed by three employees:  Eric (BDC Sales Manager); Gina Plaggi; and Nicole Masonette.  Masonette told DiCresce to leave Domingues alone.

24. After the assault, Domingues again reported DiCresce's conduct to Milkovich on May 13, 2017 at approximately 8:00 a.m.  Milkovich again said he would speak with Mayer about DiCresce's behavior.

25. Also, on May 13, 2017, Domingues directly reported DiCresce's behavior to Mayer.  Mayer's response was to laugh in claimant's face.

26. On May 15, 2017, Domingues complained to Jessica Barton, who is an owner and Vice President of Barton.   Jessica Barton also found it amusing and laughed. Indeed, Jessica remarked to Domingues that if she had "hit" DiCresce in response to the harassment and touching (or as a way of stopping it), *she* would be the one to be fired.

27. Jessica Barton also said she would interview three witnesses who had also complained.

28. On information and belief, DiCresce was sent home for half a day after Jessica Barton interviewed the witnesses.

29. After May 15, 2017 and commencing on or about June 1, 2017, DiCresce engaged in a new course of harassment – retaliating against Domingues for her complaints - calling her a "bitch" and attempting to intimidate her on any occasion when they passed each other at the work place.

30. On or about June 15, 2017, DiCresce, in an intimidating manner, verbally

attacked Domingues, saying "what the fuck is your problem" and directing her, "you need to

grow up". DiCresce cornered Domingues outside on the side of the building near a fence,

standing next to Domingues, face to face. Domingues again reported DiCresce's offensive

conduct and retaliation to Robert Milkovich and to Donald Mayer. Mayer told Domingues that

he would have a talk with DiCresce.

31. On July 10, 2017 DiCresce called Domingues a "coffee nigger". Domingues

immediately complained of the "coffee nigger" comment separately to both Milkovich and to

Mayer. Milkovich said he would talk to Mayer. When Domingues told Mayer, Mayer screamed

that she needed to "not yell at me," and Domingues told Mayer that he needed to control his

employees and that he was a coward who let his employees walk all over him. When

Domingues explained the "coffee nigger" comment to Mayer, he laughed and told her to "get

over it." He then asked her, "Are you a coffee nigger?" Domingues reiterated the touching, the

harassment, and that Mayer and Barton were letting DiCresce get away with it all, as well as

DiCresce's continued threats.

32. On or about July 11, 2017, Domingues wrote Jessica Barton and informed her

again about DiCresce's harassment, and referred to Mayer's lack of action about the harassment

and his finding it amusing.

33. Upon information and belief, Mayer sent DiCresce home again with pay.

34. Amongst other retaliatory and threatening behavior, DiCresce also stalked and

threatened Domingues by following her to the bathroom and engaging in other intimidating

looks and behavior.

35. Further retaliation followed, unchecked by Barton and later even

embraced by both defendants BCC and Ron Barton: On or about August 9, 2017, as Domingues

got out of her car, DiCresce walked near Domingues and called her a "bitch."  Domingues

immediately complained to owner Ron Barton concerning DiCresce's offensive course of

conduct and the fact that DiCresce had not ceased the retaliatory intimidating behavior after

Domingues's initial and repeated complaints.  Nor had defendants Barton nor Ron Barton

stopped DiCresce's retaliatory behavior.  Ron Barton said he would find out what's going on.

      36. Later, Ron Barton told Domingues that there was no proof of any "ongoing"

harassment, and that she "should file a police charge so that someone could figure out who

should be brought up on perjury charges."  Ron Barton said that "stories are changing now."

      37. Ron Barton repeated that "stories are changing" and that Domingues should

file a police report against DiCresce.  Such failed to take any constructive or assertive action in

protecting Domingues at work, nor protecting her from her protected activity in complaining

repeatedly of the sexual harassment and the retaliatory intimidation.

      38. Instead, on the very next day, Thursday, August 10, 2017, Ron Barton and

defendant BCC further retaliated against Domingues by and through the following:

- Changing Domingues's hours from 9 a.m.-6 p.m. (which permitted her to take her children to school and perform other tasks in the morning) to 8 a.m.-5 p.m.

- Ron Barton and BCC took away claimant's opportunity to work overtime on every other Saturday.

- Ron Barton and BCC moved Domingues from the new building in which she worked to the old building.  DiCresce was permitted to stay working in the new building despite her actions of harassment, intimidation, and retaliation.

- Both defendants and Mayer completely changed Domingues's job responsibilities, taking away responsibilities as parts cashier (such as ringing up sales and customer interaction) and now designating her a service parts employee who would report directly to Mayer who had done nothing to stop the harassment.  Rather, Mayer had laughed at the harassment and done nothing to address the retaliation by DiCresce.

39. After Ron Barton changed her job duties, Domingues explained to him that she wasn't comfortable under Mayer because they had had several disagreements about DiCresce in the past.  Ron Barton tried to explain that the touching was months ago.  And "it's over." When Domingues protested that she didn't know anything about service, Ron Barton only replied that "you will learn it, just like you learned this."  Ron Barton stated that he couldn't move DiCresce, without any "ongoing proof" of harassment.  Domingues objected, and further spoke with Milkovich telling him that she was unhappy about the move and working with Mayer; he agreed that DiCresce had admitted to touching Domingues's breasts.

40. Whereas, the wrongdoer and harasser were permitted to stay in the new building with no job changes, Ron Barton unfairly retaliated against Domingues in that she lost work hours, changed Domingues's work hours which interfere with Domingues's work schedule, give her no access to receive overtime work on Saturdays, and she was now directed to report to the supervisor of the harassing employee who has never taken any steps to stop the harassment.

41. Most importantly, the service parts employee position was substantially different, and with more difficult working conditions, than those of the parts cashier position. Barton and Mayer thus assigned Domingues substantially different work in the service parts position, lifting heavy boxes for returns and shipments that could weigh as much as 25 – 60 lbs., a significant weight requirement and job requirement requiring significant physical labor that had never existed in her prior employment as a receptionist.

42. The two jobs had in common that "parts" were part of the title, but the service job primarily concerned the moving and managing of parts in the old building in a warehouse setting.  In contrast, the prior parts cashier position performed in the new building consisted of

doing the cashier work and taking credit cards in the sale of parts, while interacting with and cashing out service customers, taking payments, and doing the daily cash deposits.

43. The parts cashier in the new building that Domingues had previously held, and the new job duties of the inventory specialist or service parts position in the old building, were substantially different -- even if a few duties overlapped.  As a parts cashier, Domingues primarily set up appointments, did billing work on the computer, operated the cashier, and interacted with customers in some ways performing receptionist duties.  In the inventory service parts position, she moved heavy boxes, pulling car parts to be discarded from the storage space, and working at an elevated space, walking on a cat walk (iron grated) with dress shoes, while performing only very limited billing work.  Working on the cat walk and balancing herself there with such shoes, while also carrying, removing and arranging for the discard of heavy equipment parts, was a substantial change in her previous job duties.  Defendants now required Domingues to pull approximately 10-20 items per day, some of them heavy items weighing from 25 - 60 lbs., and prepare them for shipment and discard, a dramatic change in the character of her duties. Further, she would need to store and put new parts away that came in on a daily delivery. Carrying significant weights in dress shoes on an iron grate at an elevation also created a known falling risk.

44. Even Ron Barton recognized that he had assigned new duties, and that Domingues "would learn" them, just as she had learned her prior duties.  However, now these duties presented elements of danger to her.

45. Indeed, after several days of being required to work at the elevated location while working in dress shoes on the iron grate where the shoes easily slipped, Domingues refused to where those shoes as she was at a significant risk of falling on the grated cat walk and

sustaining serious injury.  Defendant Barton relented and permitted her to wear safer footwear, but only after first subjecting her purposefully to bodily risk.

46. Defendants BCC and Ronald Barton have unlawfully discriminated against Domingues and created a hostile work environment which is offensive and unreasonably interfered with Domingues's ability to do her work.  Further, the new job duties created a further hostile environment, based on both defendants' retaliatory intent to create an ongoing hostile environment in order to punish Domingues for her continued complaints and opposition to the unlawful sexual and retaliatory harassment from DiCresce.

47. From the creation and perpetuation of the hostile environment on the basis of sex and retaliation, Domingues has suffered severe emotional harm and sought treatment for emotional stress and anxiety at the emergency room at St. Luke's Hospital on two separate occasions on or about August 9, 2017 and August 10, 2017. She consulted her primary care physician on August 14, 2017, who temporarily removed her from the work place due to a severe amount of anxiety and stress created by defendant's unlawfully retaliation and harassment.

48. Following her return to work at the start of September 2017, Domingues sustained a serious injury to her shoulder on or about September 20, 2017 while lifting a heavy car part in the cat walk area where parts were stored in the service building.  Domingues suffered a tear of her tendon in her left rotator cuff.  Domingues had never experienced physical injury in her performing the duties of the parts cashier position; she experienced a serious physical injury from the heavy lifting that she performed on the catwalk in the service position, within two months of starting that position.

49. Ultimately, she was no longer able to complete her duties because of this injury, and she took a disability leave from her work at BCC.

50. After receiving a course of physical therapy for several months for her torn rotator cuff, Domingues' physician operated on her left shoulder in or about February 27, 2018. Domingues has been unable to work in her last position in service parts up until the present time, and has been forced to collect workers' compensation benefits due to the workplace injury she sustained in the new and substantially different position that defendants forced her to perform. Defendants BCC and Ron Barton knew that such service position presented substantially more burdensome and even dangerous day-to-day working conditions, and are liable for the emotional harm and physical pain resulting from their creation of such a retaliatory hostile working environment.

## FIRST CAUSE OF ACTION

### TITLE VII against Defendant BCC or Barton

51. Plaintiff repeats and realleges paragraphs 1 through 52 of this Complaint as if set forth herein.

52. Defendant employer BCC intentionally violated Title VII as alleged above, failed to prevent unlawful sexual harassment and the creation of a hostile environment on the basis of sex, and participated in and engaged in retaliation against plaintiff when she engaged in protected activity and opposed defendants' unlawful actions.  It created and condoned a continued retaliatory hostile environment against Domingues based on retaliatory animus.

53. Defendant BCC further permitted and participated in retaliation against Domingues after she opposed defendants' unlawful practices.  Defendant BCC permitted an environment of retaliatory animus and threats by DiCresce to go unchecked and unstopped, when DiCresce engaged in verbal harassment and threats following Domingues's multiple complaints

about DiCresce's action.  Defendants BCC endorsed a hostile environment and threats based on retaliation, clearly adversely affected the working environment for Domingues.

54. Further, defendant BCC changed the terms and conditions of Domingues's employment in a material way, sufficient to be a tangible change and even a demotion of her job duties.  By requiring Domingues to work in the service parts position, it substantially altered her job duties, and relegated her to performing heavy lifting duties at an elevated location.  Such subjected Domingues to more burdensome and even dangerous work conditions (on the iron grated catwalk), and ultimately resulted in her injury of her shoulder.  The retaliatory change in job assignments and tasks clearly adversely affected the working environment for Domingues, and created a hostile working environment.

55. As such, defendant BCC's actions harmed plaintiff such that it is liable to her for backpay, lost benefits, attorneys' fees, compensatory damages and damages for emotional harm and physical pain, and punitive damages.

## SECOND CAUSE OF ACTION

**New York Human Rights Law, against Defendants BCC and Ronald Barton**

56. Plaintiff repeats and realleges paragraphs 1 through 55 of this Complaint as if set forth herein.

57. Defendants Barton or BCC and Ronald Barton intentionally violated the Human Rights Law as alleged above, Executive Law §296 (1)(a), failed to prevent unlawful sexual harassment and the creation of a hostile environment on the basis of sex, and participated in and allowed to exist retaliation against plaintiff when she engaged in protected activity.  BCC failed to correct or stop unlawful sexual harassment by a co-worker about which it had repeated and substantial knowledge.  BCC and Ronald Barton also condoned and actively participated in

the creation of a hostile environment against Domingues based on a retaliatory animus after she repeatedly opposed the unlawful sexual harassment and DiCresce's repeated threats and acts of retaliation.

58. Defendants Barton and Ronald Barton further permitted and participated in retaliation against Domingues after she opposed defendants' unlawful practices.  Both defendants permitted an environment of retaliatory animus and threats by DiCresce to go unchecked and unstopped, when DiCresce engaged in verbal harassment and threats following Domingues's multiple complaints about DiCresce's action.  Defendants created and endorsed a hostile environment and threats based on retaliation, clearly adversely affected the working environment for Domingues.

59. Further, defendants both changed the terms and conditions of Domingues's employment in a material way, sufficient to be a tangible change and even a demotion of her job duties.  By requiring Domingues to work in the service parts position, defendants substantially altered her job duties, and relegated her to performing heavy lifting duties at an elevated location.  Such subjected Domingues to more burdensome and even dangerous work conditions (on the iron grated catwalk), and ultimately resulted in her injury of her shoulder.  The retaliatory change in job assignments and tasks clearly adversely affected the working environment for Domingues, and created a hostile working environment.

60. Defendant Ronald Barton actively participated in and initiated the change of assignment of Domingues to the service parts position.  Defendant Barton actively participated and initiated the creation of a retaliatory working environment, following DiCresce's lead by substantially by adversely affecting Domingues's working conditions.  Ronald Barton assigned Domingues substantially inferior and physically demanding and even dangerous work;

Domingues warned Barton that such work was substantially more difficult and more physically

rigorous.  Ron Barton individually initiated and himself directed a change in job duties and

assignment, that ultimately resulted in a serious physical injury and surgery.

61. As such, defendants' actions harmed Domingues, such that they are both

liable to him for backpay, lost benefits, and compensatory damages and damages for emotional

harm and physical pain.

**WHEREFORE**, Domingues demands judgment against Defendants as

follows:

(a)     on the First Cause of Action against defendant Employer
        BCC, an award of statutory damages, including back pay and
        fringe benefits, compensatory damages for emotional harm
        and physical pain, and punitive damages, the exact amount to
        be proven at trial; including, but not limited to, injunctive
        relief such as reinstatement to her prior position or front-pay,
        attorneys' fees, costs and disbursements incurred in connection
        with this action; and

(b)     on the Second Cause of Action against both Defendants, an award
        of backpay and fringe benefits, compensatory damages for
        emotional harm and physical pain, including injunctive relief such
        as reinstatement to her prior position or front-pay, and costs and
        disbursements incurred in connection with this action.

Dated: Goshen, New York
       August 27, 2018

FOULKE LAW FIRM

By:    _s/Michael Ranis, Esq._
Michael Ranis, Esq. (MBR #3757)
ATTORNEYS FOR PLAINTIFF
55 Main Street, 2nd Floor
Goshen, NY  10924
845-294-4308

14