UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------X
CHRISTINE DOMINGUES,

                              Plaintiff,

v.

BARTON CHEVROLET CADILLAC and
RONALD BARTON,

                              Defendants.
-------------------------------------------------------X

**MEMORANDUM OPINION
AND ORDER**

18-CV-07772 (PMH)

PHILIP M. HALPERN, United States District Judge:

Plaintiff Christine Domingues ("Plaintiff") brings this action under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* ("Title VII") and New York Human Rights Law, New York State Executive Law § 296 *et seq.* ("NYSHRL") alleging that Barton Chevrolet, Inc. ("Barton Chevrolet")[1] and Ronald Barton ("Barton" and collectively "Defendants") engaged in unlawful employment practices, including creation of a hostile work environment and retaliation.

Presently pending before the Court is Defendants' motion for summary judgment, dated April 3, 2020, seeking dismissal of Plaintiff's claims pursuant to Federal Rule of Civil Procedure 56. (Doc. 36; Doc. 38, "Defs. Br."). Plaintiff filed a brief in opposition to Defendants' motion on May 28, 2020 (Doc. 47, "Pl. Br.") and the motion was fully submitted with the filing of Defendants' reply brief on June 24, 2020 (Doc. 50, "Reply").

For the reasons set forth below, Defendants' motion is GRANTED in part.

---

[1] The entity named in Plaintiff's Complaint is Barton Chevrolet Cadillac. However, according to Defendants, the proper name for the entity is Barton Chevrolet, Inc. Herein, the Court refers to the corporate entity as "Barton Chevrolet."

## BACKGROUND

The facts, as recited below, are taken from Plaintiff's Complaint (Doc. 1, "Compl."), Defendants' Local Rule 56.1 Statement (Doc. 39, "56.1 Stmt."), Plaintiff's opposition to Defendants' Local Rule 56.1 Statement (Doc. 46, "56.1 Opp'n"), and the admissible evidence submitted by the parties.

Barton Chevrolet is a car dealership in Newburgh, New York, which is owned by Barton. (56.1 Stmt. ¶¶ 1, 20). On or about October 24, 2016, Plaintiff was hired by Robert Milkovich ("Milkovich"), Barton Chevrolet's Parts Manager, to work as a parts cashier. (*Id.* ¶ 5). Throughout Plaintiff's employment with Barton Chevrolet, Milkovich was her supervisor. (*Id.* ¶¶ 6, 13).

While Plaintiff was hired initially to work in the Barton Chevrolet Service Building (the "Service Building"), at some time point, but not later than January 2017, Plaintiff was moved to the Barton Chevrolet Sales Building (the "Sales Building"). (*Id.* ¶¶ 6-7). Plaintiff's job duties in the Sales Building were primarily clerical in nature and included "interacting with customers, ringing up sales of parts and cashing out service customers, taking payments, and doing the daily cash deposits" as well as "order[ing] parts . . . [and] answering the phones." (Compl. ¶ 13; 56.1 Stmt. ¶ 6 (citing Doc. 37, "Chylinski Decl." Ex. B, "Domingues Dep." at 26:20-27:23)).

I.  The May 12, 2017 Incident

On May 12, 2017, Lucia DiCrese ("DiCrese"), a fellow employee, touched Plaintiff's breast (the "May 12 Incident"). (56.1 Stmt. ¶ 12 (citing Domingues Dep. at 36:15-17)). Plaintiff testified that she walked into DiCrese's room and handed DiCrese a piece of paper at which time DiCrese, "got up out of her chair and she started making sexual comments about [Plaintiff's] breasts and she grabbed [Plaintiff's] breast physically." (56.1 Opp'n ¶ 12 (citing Domingues

2

Dep. at 37:2-6)). DiCrese allegedly said "they can't be real, they are too big for you, why do they bounce when you walk." (*Id.* (citing Domingues Dep. at 37:15-17)). Plaintiff testified that three other employees—Gina, Nicole, and Eric—witnessed the incident. (*Id.* (citing Domingues Dep. at 37:8-9)).

Plaintiff reported the incident to Milkovich on either May 12 or May 13, 2017. (56.1 Stmt. ¶ 13 (citing Domingues Dep. at 39:4-9; Chylinkski Decl., Ex. C, "Milkovich Dep." at 44:20-45:4)). Plaintiff also reported the incident to Don Mayer ("Mayer"), DiCrese's supervisor, on May 13, 2017, (*id.* ¶ 14 (citing Domingues Dep. at 41:20-23; Chylinski Decl., Ex. D, "Mayer Dep." at 38:17-39:11)), and Jessica Barton ("Jessica"), the office manager and Barton's daughter, at some point in May. (*Id.* ¶ 14; 56.1 Opp'n ¶ 14 (citing Domingues Dep. at 42:10-18)). After the incident was reported to Mayer, Mayer spoke to Eric who stated that he was aware of the incident but did not witness it personally. (56.1 Stmt. ¶ 15 (citing Milkovich Dep. at 15:4-17)). Mayer also spoke to DiCrese about the incident and DiCrese admitted that she had touched Plaintiff's breast on May 12, 2017. (*Id.* ¶ 17 (citing Mayer Dep. at 46:15-47:20)). DiCrese allegedly told Mayer that she was surprised that Plaintiff had complained about the incident because they were friends and she was just joking. (*Id.* ¶ 18 (citing Mayer Dep. at 48:5-18)). Mayer sent DiCrese home for the day. (*Id.* ¶ 19 (citing Mayer Dep. at 47:19-20)).

II.   The Police Report and Restraining Order

On August 9, 2017, Plaintiff filed a police report with the Newburgh Police Department related to the May 12 Incident. (*Id.* ¶ 31 (citing Chylinski Decl. Ex. J, "Police Report")). Based on the Police Report, a temporary restraining order was issued on August 25, 2017 requiring DiCrese to stay "at least 500 feet" away from Plaintiff until December 5, 2017. (*Id.* ¶ 32 (citing

Chylinski Decl. Ex. K)). DiCrese was arrested that same day. (*Id.* ¶ 33 (citing Chylinski Decl. Ex. L)).

III.   Plaintiff's August 9, 2017 Meeting with Barton and Subsequent Events

Plaintiff first complained to Barton about the May 12 Incident on August 9, 2017. (*Id.* ¶ 20 (citing Domingues Dep. at 55:20)). Plaintiff met with Barton to discuss the incident on two more occasions. (*Id.* ¶¶ 22-23 (citing Chylinski Decl., Ex. E, "Barton Dep." at 48:25-49:6, 54:20-23)). Barton testified that, prior to August 9, 2017, he was unaware of the May 12 Incident, (*id.* ¶ 24 (citing Barton Dep. at 27:23-25)), but after learning of the incident he spoke to Milkovich, Mayer, and Jessica to investigate Plaintiff's allegations. (*Id.* (citing Barton Dep. at 55:11-12)).

After meeting with Barton on August 9, 2017, Plaintiff worked until approximately 2:30 p.m. on August 10, 2017 and was thereafter out of work until August 31, 2017. (*Id.* ¶ 34 (citing Domingues Dep. 59:15-60:16; Ex. N at 13)). When Plaintiff returned to work at Barton Chevrolet on August 31, 2017, she was moved from the Sales Building to the Service Building and continued reporting to Milkovich. (*Id.* ¶ 35 (citing Milkovich Dep. at 71:14-20)). Plaintiff retained the same hourly rate ($10/hour) and the same benefits. (*Id.* ¶ 36 (citing Domingues Dep. at 84:12-15)). Plaintiff testified, however, that after she was transferred to the Service Building, she was "working less hours" and that she would be "sen[t] . . . home early [because] there was nothing for [her] to do." (56.1 Opp'n ¶ 36 (citing Domingues Dep. at 64:20-21, 84:15-18)). Additionally, and unlike her job in the Sales Building, in the Service Building Plaintiff was unable to work Saturdays where she could earn overtime pay of $15/hour. (*Id.* (citing Domingues Dep. at 29:10-15, 84:20)). Plaintiff testified further that her job duties in the Service Building differed from her job duties in the Sales Building because she "was doing manual, physical work" (*id.* ¶ 37 (citing Domingues Dep. at 64:13-14)), including lifting heavy boxes (56.1 Stmt.

¶ 43 (citing Milkovich Dep. at 104:14-17)). On September 20, 2017, Plaintiff injured her shoulder at work while "lifting boxes." (*Id*. ¶ 45 (citing Domingues Dep. at 60:20-61:2)). Thereafter, Plaintiff did not return to work. (*Id.* ¶ 46 (citing Domingues Dep. at 90:11-14)).

IV.   <u>Verbal Harassment</u>

While Defendants deny that Plaintiff ever complained about inappropriate sexual comments from DiCrese prior to May 12, 2017 (56.1 Stmt. ¶¶ 47-50), Plaintiff testified that she spoke to Milkovich and/or Mayer "between five and ten" times in the Spring of 2017 regarding DiCrese "talking sexually" to her. (56.1 Opp'n ¶ 47 (citing Domingues Dep. at 39:13-40: 17)). According to Plaintiff, throughout April and May of 2017, "every time [she] went to work" DiCrese would make sexual comments to Plaintiff about her breasts such as, "Why are they big? Why do they bounce when you walk?  Your boobs are too big for you." (Domingue Dep. at 44:22-45:2). Additionally, at some point after May 13, 2019, Plaintiff alleges she told Mayer and/or Milkovich that DiCrese had called her a "coffee nigger." (56.1 Stmt. ¶¶ 51-52 (citing Domingues Dep. at 77:22-78:17)). Milkovich remembers being informed of this incident. (*Id.* ¶ 52 (citing Milkovich Dep. at 54:6-9)). Milkovich also remembered Plaintiff complaining to him about DiCrese calling her a "bitch." (*Id.* ¶ 56 (citing Milkovich Dep. at 60:22-61:5)).

## **STANDARD OF REVIEW**

Pursuant to Federal Rule of Civil Procedure 56, a court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed R. Civ. P. 56(a). "A fact is 'material' if it 'might affect the outcome of the suit under the governing law,' and is genuinely in dispute 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Liverpool v. Davis*, No. 17-CV-3875, 2020 WL 917294, at *4 (S.D.N.Y. Feb. 26, 2020) (citing

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). "'Factual disputes that are irrelevant or unnecessary' are not material and thus cannot preclude summary judgment." *Sood v. Rampersaud*, No. 12-CV-5486, 2013 WL 1681261, at *1 (S.D.N.Y. Apr. 17, 2013) (quoting *Anderson*, 477 U.S. at 248). The Court's duty, when determining whether summary judgment is appropriate, is "not to resolve disputed issues of fact but to assess whether there are any factual issues to be tried." *Id.* (quoting *Wilson v. Nw. Mut. Ins. Co.*, 625 F.3d 54, 60 (2d Cir. 2010)). Indeed, the Court's function is not to determine the truth or weigh the evidence. The task is material issue spotting, not material issue determining. Therefore, "where there is an absence of sufficient proof as to one essential element of a claim, any factual disputes with respect to other elements of the claim are immaterial." *Bellotto v. Cty. of Orange*, 248 F. App'x 232, 234 (2d Cir. 2007) (quoting *Salahuddin v. Goord*, 467 F.3d 263, 281 (2d Cir. 2006)).

"It is the movant's burden to show that no genuine factual dispute exists." *Vermont Teddy Bear Co. v. 1-800 Beargram Co.*, 373 F.3d 241, 244 (2d Cir. 2004) (citing *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970)). The Court must "resolve all ambiguities and draw all reasonable inferences in the non-movant's favor." *Id.* (citing *Giannullo v. City of N.Y.*, 322 F.3d 139, 140 (2d Cir. 2003)). Once the movant has met its burden, the non-movant "must come forward with specific facts showing that there is a genuine issue for trial." *Liverpool*, 2020 WL 917294, at * 4 (quoting *Matsushita Elec. Indus. Co.* v. *Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986)). The non-movant cannot defeat a summary judgment motion by relying on "mere speculation or conjecture as to the true nature of the facts." *Id.* (quoting *Knight* v. *U.S. Fire Ins. Co.*, 804 F.2d 9, 12 (2d Cir. 1986)). However, if "there is any evidence from which a reasonable inference could be drawn in favor of the opposing party on the issue on which summary

judgment is sought, summary judgment is improper." *Sood*, 2013 WL 1681261, at \*2 (citing *Sec. Ins. Co. of Hartford v. Old Dominion Freight Line Inc.*, 391 F.3d 77, 83 (2d Cir. 2004)).

Should there be no genuine issue of material fact, the movant must also establish its entitlement to judgment as a matter of law. *See Glover v. Austin*, 289 F. App'x 430, 431 (2d Cir. 2008) ("Summary judgment is appropriate if, but only if, there are no genuine issues of material fact supporting an essential element of the plaintiffs' claim for relief."); *Pimentel v. City of New York*, 74 F. App'x 146, 148 (2d Cir. 2003) (holding that because plaintiff "failed to raise an issue of material fact with respect to an essential element of her[] claim, the District Court properly granted summary judgment dismissing that claim"). Simply put, the movant must separately establish that the law favors the judgment sought.

## ANALYSIS

Plaintiff asserts two claims for relief sounding in hostile work environment and retaliation under both Title VII and NYSHRL. Defendants move for summary judgment on both claims. The arguments advanced by Defendants concerning each claim are analyzed *seriatim*.

I.  Title VII Claims

    a.  Claims against Barton

Defendants argue that Plaintiff's Title VII claims against Barton must be dismissed because liability under Title VII does not extend to individuals. (Defs. Br. at 19). Defendants are correct. *See, e.g.*, *Patterson v. Cty. of Oneida, N.Y.*, 375 F.3d 206, 221 (2d Cir. 2004) ("[I]ndividuals are not subject to liability under Title VII." (quoting *Wrighten v. Glowski*, 232 F.3d 119, 120 (2d Cir. 2000))); *Wickes v. Westfair Elec. Co.*, No. 19-CV-10673, 2021 WL 217318, at \*6 (S.D.N.Y. Jan. 20, 2021) (same). Plaintiff does not argue otherwise in her opposition brief and thus the Court considers the argument waived. *Altowaiti v. Cissna*, No. 18-

CV-508, 2020 WL 2036703, at *4 (S.D.N.Y. Apr. 28, 2020) ("Plaintiffs wholly fail to address any of these arguments in opposition and have therefore waived them."). Accordingly, Plaintiff's Title VII claims against the individual Defendant, Barton, are dismissed.

      b.    <u>Claims Against Barton Chevrolet</u>

          i.  <u>Hostile Work Environment Claim</u>

Title VII of the Civil Right Act of 1964 makes it "an unlawful employment practice for an employer . . . to discriminate against any individual with respect to [her] compensation, terms, conditions, or privileges of employment, because of such individual's . . . sex." 42 U.S.C. § 2000e-2(a). "A plaintiff seeking relief for sex discrimination can proceed under two theories: (1) 'quid pro quo' [or] (2) 'hostile work environment.'" *Kotcher v. Rosa & Sullivan Appliance Ctr., Inc.*, 957 F.2d 59, 62 (2d Cir. 1992) (quoting *Meritor Savings Bank FSB v. Vinson*, 477 U.S. 57, 64-65 (1986)). Under the first theory, the plaintiff "must establish that she was denied an economic benefit either because of gender or because a sexual advance was made by a supervisor and rejected by her." *Id.* (citing *Meritor*, 477 U.S. at 65). Under the second theory— the theory of liability Plaintiff pursues herein (Compl. ¶¶ 51-55)—"a plaintiff who is harassed by a co-worker [must] show both (1) a hostile work environment and (2) that a specific basis exists for imputing the conduct that created the hostile environment to the employer." *Distasio v. Perkin Elmer Corp.*, 157 F.3d 55, 62 (2d Cir. 1998) (citing *Van Zant v. KLM Royal Dutch Airlines*, 80 F.3d 708, 715 (2d Cir. 1996)). The two prongs of a hostile work environment claim premised on sexual harassment are analyzed in turn.

First, "for sexual harassment to be actionable, it must be sufficiently severe or pervasive—both subjectively and objectively—to alter the conditions of [the victim's] employment and create an abusive working environment." *Mendez-Nouel v. Gucci Am., Inc.*, 542

F. App'x 12, 13 (2d Cir. 2013) (quoting *Harris v. Forklift Sys.*, 510 U.S. 17, 21-22 (1993); *Meritor*, 477 U.S. at 67) (internal quotation marks and citations omitted)). "And, of course, the plaintiff must establish that the hostile or abusive treatment was because of his or her sex." *Id.* (quoting *Redd v. N.Y. State Div. of Parole*, 678 F.3d 166, 175 (2d Cir. 2012)).

A plaintiff may establish the "severe or pervasive" element of a hostile work environment claim by identifying either "a single incident [that] was extraordinarily severe or [] a series of incidents [that] were sufficiently continuous and concerted to have altered the conditions of her working environment." *Desardouin v. City of Rochester*, 708 F.3d 102, 105 (2d Cir. 2013) (quoting *Cruz v. Coach Stores, Inc.*, 202 F.3d 560, 570 (2d Cir. 2000)). A "plaintiff does not need to show that h[er] 'hostile working environment was both severe *and* pervasive; only that it was sufficiently severe *or* sufficiently pervasive, or a sufficient combination of these elements, to have altered her working conditions.'" *Mendez-Nouel*, 542 F. App'x at 13 (quoting *Pucino v. Verizon Wireless Commc'ns, Inc.*, 618 F.3d 112, 119 (2d Cir. 2010)). Isolated incidents of offensive conduct will generally not support a claim of discriminatory harassment, unless the incident is "extremely serious." *Petrosino v. Bell Atl.*, 385 F.3d 210, 223 (2d Cir. 2004). A court must be careful, however, "not to view individual incidents in isolation," but rather "[i]n assessing the evidence" the Court's task is "to determine whether a rational juror could infer that a reasonable employee would have found the abuse so pervasive or severe as to alter her working conditions." *Redd*, 678 F.3d at 176. Thus, "especially in the context of a claim of sexual harassment, where state of mind and intent are at issue, the court should not view the record in piecemeal fashion." *Id.* (quoting *Kaytor v. Elec. Boat Corp.*, 609 F.3d 537, 548 (2d Cir. 2010)). Regarding whether a work environment is objectively hostile, the Court must assess the "'totality

of the circumstances,' viewed from 'the perspective . . . of a reasonable person in the plaintiff's position.'" *Id.* (quoting *Petrosino*, 385 F.3d at 221).

The May 12 Incident, paired with DiCrese's comments to Plaintiff of a sexual nature, establish sufficient facts that a jury could reasonably conclude that Plaintiff's work environment was objectively hostile. The essential factual allegations regarding the May 12 Incident are not in dispute. Plaintiff testified that DiCrese touched her breast on May 12, 2017 (56.1 Stmt. ¶ 12), and, according to Mayer's testimony, when he confronted DiCrese about Plaintiff's allegations, Dicrese admitted that she had, in fact, touched Plaintiff's breast that day (*id.* ¶ 17). Defendants nonetheless argue that this "single instance of touching" was just "a joke" and therefore is insufficient to support a finding that Plaintiff's work environment was tainted by severe or pervasive harassment so as to be actionable. (Defs. Br. at 15-16). The single case cited by Defendants in support of this argument, *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101 (2002), is easily distinguishable. In *Morgan*, the plaintiff alleged that he was subject to a "racially hostile work environment" and the precise issue addressed by the Court was the scope of the "continuing violation doctrine"—*i.e.* whether it was appropriate to consider a plaintiff's allegations of racial discrimination that occurred outside of Title VII's statute of limitations in support of a hostile work environment claim. *Id.* at 104-05. The issue addressed in *Morgan* does not exist in this case. The Second Circuit, in opinions post-dating *Morgan*, has held repeatedly that evidence of "a single incident" of sexual harassment that is "extraordinarily severe" can establish an objectively hostile work environment. *See e.g.*, *Agosto v. New York City Dep't of Educ.*, 982 F.3d 86, 102 (2d Cir.  2020) (quoting *Desardouin*, 708 F.3d at 105); *Redd*, 678 F.3d at 175-76 ("Isolated incidents usually will not suffice to establish a hostile work environment, although we have often noted that even a single episode of harassment can establish a hostile

work environment if the incident is sufficiently severe."); *Feingold v. New York*, 366 F.3d 138, 150 (2d Cir. 2004) ("[A] single act can create a hostile work environment if it in fact 'work[s] a transformation of the plaintiff's workplace.'" (quoting *Alfano v. Costello*, 294 F.3d 365, 374 (2d Cir. 2002))); *see also Oliver v. New York State Police*, No. 15-CV-444, 2020 WL 1989180, at *30 (N.D.N.Y. Apr. 27, 2020) ("To survive summary judgment on a hostile work environment claim, a plaintiff 'must demonstrate either that a single incident was extraordinarily severe, or that a series of incidents were sufficiently continuous and concerted to have altered the conditions of her working environment." (quoting *Alfano*, 294 F.3d at 374)). Thus, *Morgan* simply does not support Defendants' proposition.

The May 12 Incident is a single incident of harassment that qualifies as "extraordinarily severe." *Reid v. Ingerman Smith LLP*, 876 F. Supp. 2d 176, 185 (E.D.N.Y. 2012) (single incident of supervisor "grabb[ing] and squeez[ing] one of [plaintiff's] breasts" was conduct sufficiently "severe to constitute a hostile work environment"); *see also Swiderski v. Urban Outfitters, Inc.*, No. 14-CV-6307, 2017 WL 6502221, at *5 (S.D.N.Y. Dec. 18, 2017) (single incident of customer reaching for plaintiff's face, putting his thumbs in her mouth, licking her cheek, and attempting to grab her chest was "sufficiently severe by itself to create a hostile work environment"); *cf. Redd*, 678 F.3d at 180 ("Direct contact with an intimate body part constitutes one of the most severe forms of sexual harassment."). Accordingly, the Court finds that Plaintiff has identified an extraordinarily severe single incident sufficient for a jury to find that an objectively hostile work environment existed.

Additionally, Plaintiff does more than identify a single extraordinarily severe incident of sexual harassment. Plaintiff testified that in addition to touching her breast on May 12, 2017, DiCrese stated "they can't be real, they are too big for you, why do they bounce when you

walk." (56.1 Opp'n ¶ 12 (quoting Domingues Dep. at 37:15-17)). Plaintiff testified also that on a different date in May 2017, Milkovich witnessed a conversation in which DiCrese "was talking about [Plaintiff's] breasts," (*id.* ¶ 47 (quoting Domingues Dep. at 34:3-35:18)), and Plaintiff stated that "prior to May 12 on at least two occasions" Plaintiff informed Jessica that she had "told DiCrese to stop making comments about [her] breasts," (*id.* (citing Doc. 45, "Domingues Aff." ¶ 19)). According to Plaintiff's testimony, in April and May of 2017, "every time [she] went to work" DiCrese would make sexual comments to Plaintiff about her breasts such as, "Why are they big?  Why do they bounce when you walk?  Your boobs are too big for you." (Domingue Dep. at 44:22-45:2). In short, even if a jury concluded that the May 12 Incident in isolation was not "extraordinarily severe," it could find that there was a series of incidents which created an objectively hostile work environment. *See Harris*, 510 U.S. at 23 (1993) ("[W]hether an environment is 'hostile' or 'abusive' can be determined only by looking at all the circumstances.").

Furthermore, Plaintiff perceived the environment to be abusive and thus her work environment could likewise be found to be subjectively hostile. (Domingues Dep. at 45:9-10 (Plaintiff testified that DiCrese "humiliate[d]" her in front of her co-workers); *id.* at 45:15 (Plaintiff considered the May 12 Incident to be an "assault"); *id.* at 59:5-14 (Plaintiff stated that she "was having anxiety attacks [and] panic attacks . . . since [DiCrese] touched [her] breasts" in May 2017)). Thus, the subjective element of a hostile work environment claim is satisfied as well. *See Harris*, 510 U.S. at 22 (finding that Title VII requires only that "the environment would reasonably be perceived, and is perceived, as hostile or abusive . . . there is no need for it also to be psychologically injurious." (citing *Meritor*, 477 U.S. at 67)).

Finally, the May 12 Incident and other statements of a sexual nature about Plaintiff's breasts were undoubtedly because of Plaintiff's sex.[2] *See, e.g., Meritor*, 477 U.S. at 68-69; *Kaytor*, 609 F.3d at 547 (holding "to prevail on a claim of hostile work environment based on gender discrimination, the plaintiff must establish that the abuse was based on her gender. . . . The harassing conduct need not be motivated by sexual desire*, however, so long as it was motivated by gender.*" (internal citations and quotation marks omitted)). Accordingly, the Court finds that the evidence adduced establishes a triable issue for the jury as to whether Plaintiff's work environment was hostile.

As to the second prong of a Title VII hostile work environment claim, a plaintiff must "demonstrate that the harassing conduct 'which created the hostile situation should be imputed to the employer.'" *Distasio*, 157 F.3d at 63 (quoting *Kotcher v. Rosa & Sullivan Appliance Ctr., Inc.*, 957 F.2d 59, 63 (2d Cir. 1992)). If the harasser is the plaintiff's supervisor, "the employer is presumed to be absolutely liable." *Id.* (citing *Faragher v. City of Boca Raton*, 524 U.S. 775, 807 (1998)). Where, as here, the harassment is attributable to a co-worker, "the employer will be held liable only for its own negligence." *Id.* (citing *Faragher*, 524 U.S. at 807). A plaintiff can establish an employer's negligence by demonstrating "that the company 'either provided no reasonable avenue for complaint or knew of the harassment but did nothing about it.'" *Id.* (quoting *Murray v. New York Univ. Coll. of Dentistry*, 57 F.3d 243, 249 (2d Cir. 1995)). Furthermore, an employer need not have actual knowledge of the harassment; it is enough if the employer or supervisory employees should have known of the harassing conduct. *Id.* (citing *Murray*, 57 F.3d at 249).

---

[2] The Court does not consider statements made by DiCrese unrelated to Plaintiff's sex in finding a triable issue as to whether Plaintiff's work environment was objectively hostile. For example, Plaintiff's allegation that DiCrese called her a "coffee nigger" (56.1 Stmt. ¶ 51) is simply not an allegation of sexual harassment.

Here, Defendants provided a reasonable avenue for Plaintiff to complain about the alleged sexual harassment. (56.1 Stmt. ¶ 11 (citing Chylinski Decl., Ex. O, "Anti-Harassment Policy" at 2 (providing that "[a]ny employee who has experienced harassment . . . should immediately report the harassment to their manager . . . ."))). Moreover, Plaintiff availed herself of the procedures outlined in the Anti-Harassment Policy. (*Id.* ¶ 13 (Plaintiff reported May 12, Incident to her supervisor, Milkovich); *see also id.* ¶ 14 (Plaintiff reported incident to DiCrese's supervisor, Mayer); *id.* ¶ 20 (Plaintiff reported incident to Barton); *id.* ¶ 25 (Plaintiff reported the incident to Jessica)). Thus, Defendants provided a reasonable avenue for Plaintiff to complain about the alleged harassment. *See Duch v. Jakubek*, 588 F.3d 757, 762-63 (2d Cir. 2009) ("[T]he relevant inquiry is not whether a *particular* avenue of complaint was effectively blocked but, rather, whether defendants 'provided *no* reasonable avenue of complaint.'" (quoting *Distasio*, 157 F.3d at 63) (emphasis in original)).

The question, then, is whether there is a factual dispute as to whether Barton Chevrolet, after learning of the alleged harassment, "failed to take appropriate remedial action." *Id.* (quoting *Howley v. Town of Stratford*, 217 F.3d 141, 154 (2d Cir. 2000)). "This standard requires a plaintiff to show that (1) someone had actual or constructive knowledge of the harassment, (2) the knowledge of this individual can be imputed to the employer, and (3) the employer's response, in light of that knowledge, was unreasonable." *Id.* at 763 (emphasis omitted). The evidence presented at summary judgment establishes that a reasonable jury could conclude that Barton Chevrolet's remedial action was unreasonable.

First, there is no dispute that multiple employees at Barton Chevrolet had knowledge of the May 12 Incident. (56.1 Stmt. ¶ 13 (Plaintiff reported May 12, 2017 incident to her supervisor, Milkovich); *id.* ¶ 14 (Plaintiff reported incident to DiCrese's supervisor, Mayer); *id.* ¶ 20

(Plaintiff reported incident to Barton); *id*. ¶ 25 (Plaintiff reported the incident to Jessica)). Moreover, Plaintiff testified that she spoke to Milkovich and/or Mayer "between five and ten" times in the Spring of 2017 about DiCrese "talking sexually" to her. (56.1 Opp'n ¶ 47 (citing Domingues Dep. at 39:13-40: 17)). Plaintiff stated that on one occasion in May 2017, Milkovich witnessed a conversation in which DiCrese "was talking about [Plaintiff's] breasts." (*Id*. ¶ 47 (quoting Domingues Dep. at 34:3-35:18)). Thus, Barton Chevrolet had actual knowledge of the May 12 Incident as well as instances in which DiCrese made inappropriate sexual comments to Plaintiff.

Second, to determine if an employee's knowledge of harassment can be imputed to an employer, the Court applies "principles of agency law." *Duch*, 588 F.3d at 763 (quoting *Torres v. Pisano*, 116 F.3d 625, 636-37 (2d Cir. 1997)). Thus, where the employee with knowledge of the harassment is (1) "at a sufficiently high level in the company's management hierarchy to qualify as a proxy for the company, or [(2)] the [employee] is charged with a duty to act on the knowledge and stop the harassment, or [(3)] the [employee] is charged with a duty to inform the company of the harassment" liability may be imputed to the employer. *Id*. (quoting *Torres*, 116 F.3d at 636-37).

Here, Plaintiff reported the May 12 Incident to two supervisory employees (Milkovich and Mayer) as well as the owner of Barton Chevrolet (Barton). According to the Anti-Harassment Policy, the supervisory employees were charged with a duty to act to investigate Plaintiff's allegations and take appropriate disciplinary actions. (Anti-Harassment Policy at 2 ("Any employee who has experienced harassment . . . should immediately report the harassment to their manager . . . or the Dealership Principle [sic]. Complaints will be afforded prompt, thorough, and impartial consideration. Where appropriate, Barton [Chevrolet] will promptly

undertake or direct an effective, thorough, and objective investigation of the harassment allegations. Upon completion of the review, a determination regarding the reported harassment will be made and communicated to the employee who complained and to the accused harasser(s).")). Thus, because Plaintiff reported the sexual harassment to employees that had a duty to act, those employees' knowledge of the harassment can be imputed to Barton Chevrolet.

Third, to determine whether an employer took reasonable remedial action the Court must assess "the totality of the circumstances." *Duch*, 588 F.3d at 766 (quoting *Distasio*, 157 F.3d at 65). "Factors to be considered in this analysis are the gravity of the harm being inflicted upon the plaintiff, the nature of the employer's response in light of the employer's resources, and the nature of the work environment." *Id*. (quoting *Distasio*, 157 F.3d at 65). Where "the evidence creates an issue of fact as to whether an employer's action is effectively remedial and *prompt*, summary judgment is inappropriate." *Id*. (quoting *Gallagher v. Delaney*, 139 F.3d 338, 348 (2d Cir. 1998) (emphasis in original)).

Here, after Plaintiff complained about the May 12 Incident, and DiCrese admitted to the gravamen of Plaintiff's allegations, Mayer sent DiCrese home for one day but did not dock her pay. (56.1 Stmt. ¶ 19 (citing Mayer Dep. at 47:19-20, 50:10-12)). While Mayer informed DiCrese that "inappropriate touching isn't allowed," (Mayer Dep. at 47:24-25), the record does not indicate that any other remedial action was doled out to DiCrese. Furthermore, Plaintiff testified that DiCreses's sexual comments about Plaintiff's breasts continued unabated after the May 12 Incident throughout May. (Domingue Dep. at 44:22-45:2 (testifying that "every time [she] went to work" in April and May of 2017 DiCrese would make sexual comments to Plaintiff about her breasts)).

The only other remedial action taken was transferring *Plaintiff* from the Sales Building to the Service Building more than three months after Plaintiff first reported the May 12 Incident to her supervisor. (56.1 Stmt. ¶ 30). DiCrese was not relocated and was allowed to continue working in the Sales Building after the May 12 Incident. (Mayer Dep. at 58:2-9). A jury could reasonably find that these remedial actions were unreasonable and thus the Court cannot conclude, as a matter of law, that Defendants' response was effectively remedial and prompt. Accordingly, the Court denies Defendants' motion for summary judgment as to the Title VII hostile work environment claim.

ii.   Retaliation Claim

To establish a *prima facie* case for retaliation under Title VII "an employee must show that (1) she was engaged in protected activity; (2) the employer was aware of that activity; (3) the employee suffered a materially adverse action; and (4) there was a causal connection between the protected activity and that adverse action." *Rivera v. Rochester Genesee Reg'l Transp. Auth.*, 743 F.3d 11, 24 (2d Cir. 2014) (quoting *Lore v. City of Syracuse*, 670 F.3d 127, 157 (2d Cir. 2012)). Here, Defendants argue only that Plaintiff cannot establish the third or fourth elements of a retaliation claim. (Defs. Br. at 19-22; Reply at 9-10). The Court considers Defendants to have waived any argument related to whether Plaintiff can satisfy the first elements of a retaliation claim. *R.R. v. Scarsdale Union Free Sch. Dist.*, 366 F. App'x 239, 242 (2d Cir. 2010) ("[A]rguments not made in an appellant's opening brief are waived."). In any event, Plaintiff can satisfy the first two elements of a retaliation claim, as her complaint about sexual harassment is a protected activity and her employer was aware that she had so complained.

Regarding whether Plaintiff suffered a materially adverse employment action, the relevant question is whether "a reasonable employee" would consider an employment action

"materially adverse" such that it may "have dissuaded a reasonable worker from making or supporting a charge of [harassment]." *Rivera*, 743 F.3d at 25 (quoting *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006)). While "there is no exhaustive list of what constitutes an adverse employment action" courts have held that "denial of promotion, addition of responsibilities, involuntary transfer that entails objectively inferior working conditions, denial of benefits, denial of a requested employment accommodation, denial of training that may lead to promotional opportunities, and shift assignments that make a normal life difficult for the employee, among other things, constitute adverse employment actions." *Potash v. Fla. Union Free Sch. Dist.*, 972 F. Supp. 2d 557, 583 (S.D.N.Y. 2013) (quoting *Little v. NBC*, 210 F. Supp. 2d 330, 384 (S.D.N.Y. 2002)). For a change in work duties to amount to a materially adverse employment action the new assignment must be "more disruptive than a mere inconvenience or an alteration of job responsibilities." *Id.* (quoting *Galabya v. N.Y.C. Bd. of Educ.*, 202 F.3d 636, 640 (2d Cir. 2000)). The standard for determining whether an employee has suffered a materially adverse employment action is an objective one. *Rivera*, 743 F.3d at 25.

The Court finds that a reasonable jury could conclude that Plaintiff's transfer from the Sales Building to the Service building—and the accompanying change in her job duties and inability to receive comparable compensation—could constitute a materially adverse employment action. When working in the Sales Building, Plaintiff's duties consisted of clerical tasks and did not include any physical labor. (56.1 Stmt. ¶ 6 (citing Domingues Dep. at 26:20-27:2); 56.1 Opp'n ¶ 37 (citing Milkovich Dep. at 26:18-31:21)). When Plaintiff was transferred to the Service Building, she continued to do some of the same clerical work, but she testified that she was also "doing manual, physical work, lifting parts that were heavier than [her]." (56.1 Op'n ¶ 37 (citing Domingues Dep. at 64:12-17)). Milkovich corroborated Plaintiff's testimony

stating that after Plaintiff was transferred to the Service Building her job duties involved manual labor, including "lift[ing] boxes and car parts." (*Id.* (citing Milkovich Dep. at 72:19-21)). Additionally, according to Plaintiff, the Service Building was "filthy," and whereas in the Sales Building Plaintiff's role was customer-facing, "customers [were] not allowed" in the Service Building. (Domingues Dep. at 64:2-66:17). Finally, while Plaintiff's hourly rate and benefits did not change after her transfer (56.1 Stmt. ¶ 36), Plaintiff testified that she received less money when working in the Service Building as she would be sent home early because "[t]here was nothing for [her] to do" (56.1 Opp'n ¶ 36 (citing Domingues Dep. at 64:20-21, 84:15-18)), and she could no longer work on Saturdays and receive overtime pay (*id.* (citing Domingues Dep. at 29:12-15, 66:22-25, 84:15-20)). Taken together, the change in job duties paired with the reduction in hours and elimination of opportunity to receive overtime pay creates a triable issue of fact as to whether Plaintiff was subject to a materially adverse employment action.

As to the fourth element of a retaliation claim, whether there was a causal connection between the protected activity (Plaintiff's complaint about sexual harassment) and the adverse employment action, Defendants argue that Plaintiff was transferred to prevent additional interactions between Plaintiff and DiCrese, not because she had complained about sexual harassment. (Defs. Br. at 20-22). It is for a jury to decide whether Plaintiff would not have been transferred to the Service Building but for her complaint to supervisors and Barton that she had been sexually harassed. Plaintiff first complained to Barton directly about the May 12 Incident on August 9, 2017; and then did not come to work for approximately three weeks. Upon her return, Plaintiff was transferred from the Sales Building to the Service Building. (56.1 Stmt. ¶ 34 (citing Domingues Dep. 59:15-60:16; Ex. N at 13); *id.* ¶ 35 (citing Milkovich Dep. at 71:14-20)). A straight line is easily drawn between these two events, and thus a jury could find that a causal

connection has been established. *See Chamberlin v. Principi*, 247 F. App'x 251, 254 (2d Cir. 2007) (finding that the "causal connection needed for a prima facie case can . . . be 'established . . . by showing that the protected activity was closely followed in time by the adverse action.'" (quoting *Lovejoy-Wilson v. NOCO Motor Fuel Inc.*, 263 F.3d 208, 224 (2d Cir. 2001))). Accordingly, the Court denies Defendants' motion for summary judgment on Plaintiff's Title VII retaliation claim against Barton Chevrolet.

## II.   NYSHRL Claims

Plaintiff asserts also state law hostile work environment and retaliation claims under the NYSHRL. (Compl. ¶¶ 56-61). "Hostile work environment and retaliation claims under the NYSHRL are generally governed by the same standards as federal claims under Title VII." *Schiano v. Quality Payroll Sys., Inc.*, 445 F.3d 597, 609 (2d Cir. 2006) (citing S*mith v. Xerox Corp.*, 196 F.3d 358, 363 n.1 (2d Cir. 1999)); *see also Mandell v. Cty. of Suffolk*, 316 F.3d 368, 377 (2d Cir. 2003) ("We will for purposes of this opinion assume that the standards of proof applicable to plaintiff's Title VII and Human Rights Law claims are the same in all relevant respects."). Thus, for the same reasons that the Court found issues of fact as to Plaintiff's Title VII claims against Barton Chevrolet, the Court finds issues of fact as to Plaintiff's NYSHRL Claims against Barton Chevrolet.

As to Plaintiff's NYSHRL Claims against Barton individually, while individuals may not be liable under Title VII, *see supra*, under certain circumstances an individual may be liable for violations of NYSHRL. Specifically, the "NYSHRL allows for individual liability under two theories: (1) if the defendant has 'an ownership interest in the employer or has the authority to hire and fire employees, N.Y. Exec. Law § 296(1), and (2) if the defendant was aiding and abetting the unlawful discriminatory acts of others, *id.* § 296(6)." *Setelius v. Nat'l Grid Elec.*

*Servs. LLC*, No. 11-CV-5528, 2014 WL 4773975, at *34 (E.D.N.Y. Sept. 24, 2014) (internal quotation marks omitted). Here, it is undisputed that Barton was the owner of Barton Chevrolet at the time of the events giving rise to this dispute. (56.1 Stmt. ¶ 20; Barton Dep. at 5:19-6:10). Thus, the Court determines that a jury could find that individual liability under the NYSHRL extends to Barton.

## CONCLUSION

For the foregoing reasons, the Court GRANTS Defendants' motion for summary judgment in part, and to the extent that the Court dismisses Plaintiff's Title VII claims against Ronald Barton. Defendants' motion for summary judgment is otherwise denied. All remaining claims will proceed to trial. The Court shall hold a status conference on March 1, 2021 at 9:30 a.m. At the time of the scheduled conference all parties shall call (888) 398-2342; access code: 3456831.

The Clerk is instructed to terminate the pending motion (Doc. 36).

Dated: New York, New York
      February 17, 2021

SO ORDERED:

_____
Philip M. Halpern
United States District Judge