UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
CHRISTINE DOMINGUES,                          :
                                              :
                            Plaintiff,        :        7:18-cv-7772 (PMH)
                                              :
            v.                                :        **PROPOSED JOINT JURY**
BARTON CHEVROLET CADILLAC,                    :        **INSTRUCTIONS AND SPECIAL**
and RONALD BARTON,                            :        **INTERROGATORIES**
                                              :
                            Defendants.       :
                                              :
------------------------------------------------------------X

## JOINT REQUESTS TO CHARGE

Pursuant to the Court's Individual Rules of Practice in Civil Cases, § 6(B)(i), the parties to the

above-captioned action hereby submit these Joint Requests to Charge the Jury at trial. The

parties respectfully request leave from the Court to submit revised or additional jury instructions

based upon the evidence adduced at trial and to conform with any rulings of law rendered by the

Court during the course of trial.

## PART I: GENERAL INSTRUCTIONS – BEGINNING OF TRIAL

## INSTRUCTION NO. 1: INTRODUCTION

Members of the jury, before you hear the evidence in this case as well as the final

arguments of the parties, I am going to instruct you generally about how a trial works. After you

have heard all the evidence, and before you go do deliberate, I will instruct you more specifically

on the law that applies in this case.

> O'Malley, Grenig & Lee, Federal Jury Practice and Instructions, §
> 101.01 Opening Instructions (6th ed. 2014) (modified)

**PROPOSED INSTRUCTION NO. 2: NATURE OF THE CLAIM**

The person suing is called the Plaintiff. The Plaintiff in this case is Christine Domingues. I will refer to her either as Domingues or Plaintiff.

Those being sued are called Defendants. There are two defendants in this case: Barton Chevrolet Cadillac, and Ronald Barton, its owner. Domingues is suing both of them. I will refer to Barton Chevrolet Cadillac as Barton Chevrolet, and to Ronald Barton as Ron Barton, and together as "defendants."

Under federal and state law, an employer may not discriminate against any employee because of the employee's sex, which includes sexual harassment. Additionally, under federal and state law, an employer may not retaliate against an employee who opposed the discrimination she faced, by, among other activities, reporting sexual harassment to her employer. I will say more about all of these terms in a few minutes, and, again, before you go to deliberate.

Domingues worked for both defendants. She brings discrimination claims that she was sexually harassed at work by a co-worker – such that the employer is liable.  Specifically, Domingues claims that she was subject to sexual comments from a co-worker, Lucy DiCresce, and that DiCresce touched her breast. Domingues also claims that defendants are liable because they knew about sexually harassing conduct, and failed to stop it.

Defendants disagree, saying they took timely actions to protect Plaintiff from further harassment.

Domingues also claims that defendants retaliated against her for having complained to management and to Ron Barton about the harassment. She further claims that the co-worker retaliated against her after she reported the harassment by continuing to harass and threaten her;

and that the employer (1) first failed to take effective action to stop DiCresce from retaliating against Plaintiff for complaining about DiCresce; and then (2) retaliated against the Plaintiff by changing her position to an inferior one with worse terms and conditions of employment, ones which ultimately resulted in physical and further emotional injury to her, while doing virtually nothing to the harassing co-worker. The costs of Plaintiff's physical injuries are not part of this trial.

Defendants disagree, saying they took the actions they took to protect Plaintiff from further harassment, not to retaliate against her.

Your role when the jury convenes after trial will be to assess the facts based on the evidence you hear at the trial and then apply the law on which I will instruct you to decide each of the different claims here. Based on the facts that you "find," you will conclude whether Plaintiff has proven each, some or all of her claims. You will then give your verdict as to each claim, against each defendant.

> Section 703(a)(1), 704(a) and 707(a) of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §2000e-2(a)(1); N.Y. Exec. Law Executive Law § 296. Adapted from Devitt, Blackmar & Wolff, Federal Jury Practice and Instructions, (4th Ed. 1987), §106.01 (1998 pocket part); Hyland v. New Haven Radiology Assoc.,P.C., 794 F.2d 793, 796 (2d Cir. 1986), rev'd on other grds, Clackamas Gastroenterology Assocs., P.C. v. Wells, 538 U.S. 440 (2003), 155 L.Ed. 2d 615.

**PROPOSED INSTRUCTION NO. 3: ORDER OF THE TRIAL**

The trial will proceed in the following manner:

First, the Plaintiff, Christine Domingues, will make an opening statement outlining the

case. Then Defendants Barton Chevrolet and Ron Barton, may make their opening statement.

Neither Plaintiff nor Defendants are required to make an opening statement. An opening

statement is not evidence, but is simply designed to provide you with an introduction as to the

evidence which the party making the statement intends to produce.

Second, Domingues, the Plaintiff, will then present evidence in support of her claims, and

counsel for Defendants Barton Chevrolet and Ron Barton may cross-examine the witnesses

called by the Plaintiff. Following the Plaintiff's case, Defendants may present evidence and

Plaintiff's counsel may cross-examine any witnesses of Defendants. Defendants, however, are

not obliged to introduce any evidence or to call any witnesses. If defendants introduce evidence,

the Plaintiff may then introduce rebuttal evidence.

Third, after presentation of evidence is completed, the attorneys may present closing

arguments to you to summarize what they consider the evidence to have shown, and the

inferences they contend you should draw from the evidence. As with opening statements, closing

arguments are not evidence. The arguments are designed to present to you the contentions of the

parties based on the evidence presented. The Plaintiff has the right to open and to close the

argument.

Finally, I will then instruct you further on the law that you are to apply in reaching your

verdict. After that, you will retire to deliberate on your verdict.

Adapted from Devitt, Blackmar & Wolff, <u>Federal Jury Practice</u>
<u>and Instructions</u> (4th Ed. 1987), §70.02.

4

**INSTRUCTION NO. 4: ROLE OF JUDGE AND JURY**

In our legal system, the parties involved in legal disputes may try their cases before a jury chosen from the members of their community, and have the jury render a verdict. Your role, as the jury, is to decide the factual issues in the case. I, as the Judge, will instruct you on the law, and you must accept the law as I state it to you. Then, you will apply that law to the facts as you find them. The result of your work will be the verdict that you return.

What do I mean when I say that your role is to decide upon the fact issues in this case? You are the sole and exclusive judges of the disputed facts, that is, the facts on which there is conflicting evidence. Your role as the jury is to determine the actual facts in this case from the evidence submitted in the form of testimony, depositions, stipulations, and exhibits. You determine the weight of the evidence; that is, the quality of the evidence, its persuasiveness, the weight and effect it has on your minds. You determine the credibility of the witnesses; that is, whether a particular witness believable. You draw the reasonable inferences from the evidence or lack of evidence. And you resolve such conflicts as there may be in the testimony. In determining these issues, no one may invade your province or functions as jurors; that is, these issues are *yours* to determine. In order for you to determine the facts, you must rely upon your own recollection of the evidence. You may at times also receive exhibits that you may refer to during the trial. I will instruct you momentarily on what is and is not evidence.

With respect to any factual matters, your recollection and your recollection alone governs. Remember that anything that counsel for either party may have said regarding matters in evidence, whether while questioning witnesses or in argument, is *not* to be substituted for your own recollection or evaluation of the evidence. So, too, anything that I may say during the trial

or may say during these instructions as to any factual matter is not to be taken in place of your

own recollection or judgment — with the exception of **Stipulated Facts**.

> Adapted from Devitt, Blackmar & Wolff, <u>Federal Jury Practice and</u>
> <u>Instructions</u> (4th Ed. 1987), § 70.05

**INSTRUCTION NO. 5: ROLE OF JUDGE AND JURY: STIPULATED FACTS**

Stipulated Facts — the only place where you, the jury, do not determine the facts — are those facts where the parties, through their respective counsel, have agreed. Therefore, they are not in dispute, and you do not have to determine them. Instead, you must treat the Stipulated Facts as having been proved. You will have to apply the law I give you to all facts, including the Stipulated Facts, in order to determine — as to each claim — whether Plaintiff or Defendants have proven each particular claim.

The stipulated facts are as follows:

1. Barton Chevrolet ("BC") is a full-service automobile dealership located at 800 Auto Park Place, Newburgh NY 12550. It is engaged in selling new and used cars, as well as servicing Chevrolet cars.

2. Ron Barton ("Barton") has been the sole owner of BC since 2003.

3. Plaintiff Christine Domingues ("Plaintiff" or "Domingues") applied for a position in BC's Business Development Center on or about August 12, 2016.  Plaintiff was not hired for the Business Development Center Position.

4. BC hired Plaintiff on or about October 24, 2016 for a parts cashier position.

5. Robert Milkovich ("Milkovich"), BC's Parts Manager, hired Plaintiff. For a period of time exceeding nine months, Plaintiff worked in the BC Sales Building, where customers visited, looked at new cars, and purchased and paid for parts. When Domingues was hired, she worked in the Service Building when she was trained on the computer processes necessary for her job as parts cashier.

6. Domingues's job duties included such clerical tasks as working in the cashier office, cashiering customers for service parts purchased in the Body Shop, relaying parts information to customers, making daily cash deposits, and making coffee for the sales staff. She performed this work in the Sales Building building and worked a schedule of 9 a.m. to 6:00 p.m.

7. On or about Friday, May 12, 2017, DiCresce "touched" Domingues's breast (the "Breast Incident" or "May 12 Incident").

8. Plaintiff reported the Breast Incident on May 12 or May 13, 2017, to her supervisor, Milkovich. Plaintiff also reported this May 12 Incident to Mayer, DiCresce's direct supervisor and BC's Service Manager, on the next day, Saturday, May 13, 2017.

9. Following Domingues's complaint to Milkovich, Mayer spoke with DiCresce about the May 12 Incident.

10. DiCresce admitted that she did, in fact, touch plaintiff's breast, but indicated that she was just "joking."

11. Mayer reprimanded DiCresce and sent her home for the rest of the day.  He did not dock her pay.

12. On August 9, 2017, Domingues informed Barton about the May 12 Incident that had occurred in May 2017.

13. On August 9, 2017, Barton told Domingues that she was going to be moved into a position working in the Service Building and that she would report to Mayer, instead of Milkovich, her current supervisor.

14. Plaintiff stated that she did not want to report to Mayer, to whom DiCresce also reported.

15. On August 10, Barton informed Plaintiff that she would be moved to the Service Building, but would continue to report to Milkovich.

16. Plaintiff was absent from work on August 11 through 31.

17. When Plaintiff returned on September 1, she began working in the Service Building.

Since the parties have so agreed, you are to take these facts as true for purposes of this case.

> Adapted from Devitt, Blackmar & Wolff, <u>Federal Jury Practice
> and Instructions</u> (4th Ed. 1987), § 70.05; Manual of Model Civil
> Jury Instructions for the Eighth Circuit, (1998 Ed.) 2.03.

**INSTRUCTION NO. 6: ROLE OF JUDGE AND JURY**

During the trial I expect to be called upon to make rulings on various questions. There may have been objections or motions may have been made to strike answers. You are to disregard all these matters. You are to disregard the fact that an objection was made and sustained or overruled or that conferences took place. These are matters of law and, although you may have been curious about them, you should not consider them.

Of course, if at any time I instructed you to disregard anything that was said, then you must follow that instruction and pay no attention to it in your deliberations. The fact that, at other times, I may comment during the course of trial or ask questions of witnesses does not indicate any feeling of mine about the facts one way or the other. Any feeling I may have indicated is to be disregarded. My comments were intended only to clarify the issue at hand, and even if I had feelings regarding an issue, it is only your judgment of the evidence that exclusively governs. The rulings I have made during the trial are not any indication of my views on what your decision should be. You are expressly to understand that this Court has no opinion as to the verdict you should render in this case.

My role, as the Judge, is to instruct you on the law that you are to apply to the facts as you find them. You, as jurors, are bound to accept my instructions on the law even if you feel that the law should be different from what I say it is. Also, if anyone has stated a legal principle that is different from any that I state to you in my instructions, it is my instructions that you must follow. You should not single out any one instruction or any one word or phrase in an instruction as alone stating the law, but you should consider the instructions as a whole.

O'Malley, Grenig & Lee, Federal Jury Practice and Instructions, §
101.01 Opening Instructions (6th ed. 2014) (modified)

**INSTRUCTION NO. 7: EMPLOYERS, CORPORATION AND AGENTS**

Barton Chevrolet is a corporation. An employer corporation can act only through individuals, such as its supervisors, Managers, President, Vice Presidents, Office Manager/Controller. An agent is one who acts or is authorized to act for a company. Barton Chevrolet has the power to take any employment action against these individuals or control their conduct in any way.

Any action by a director, officer, employee, or any agent of a corporation constitutes an action by that corporation. The federal law holds, therefore, that Barton Chevrolet is responsible for any authorized and unlawful acts of its directors, officers, contractors. or if it affects access of any individual to employment opportunities It need not be listed "technically" as the employer in order for a plaintiff to recover against that employer. Therefore, Barton Chevrolet is bound by all of the actions of its supervisors, managers, and contractors if the act is within the scope of their duties or the scope of the authority given them by Barton Chevrolet. Where Barton Chevrolet, or any of its employees or agents interferes with an individual's employment for some other named employer, Barton Chevrolet can also be held liable for its actions as the employer.

In addition, you may also determine whether any contractor, agent, supervisor, manager, or Vice President of defendant Barton Chevrolet took any action to in connection with Plaintiff's employment. Such actions are considered the act of the employer Barton Chevrolet. In this case you will hear of the actions of: Robert Milkovich ("Milkovich"), who was Plaintiff's supervisor; Don Mayer ("Mayer"), who supervised the co-worker Lucy DiCresce who Plaintiff accuses of sexually harassing her; Jessica Barton, daughter of owner Ron Barton and Office Manager/ Comptroller of Barton Chevrolet; and various other employees.

As a jury, when facts are disputed by the parties, your job is to determine which facts are the ones you believe: that is what we mean when we say "find the facts." However, you must be sure that the facts you find are consistent with the Stipulated Facts because there is no dispute between the parties as to the Stipulated Facts.

> Meritor Savings Bank, FSB v. Vinson, 477 U.S. 57. 91 L.Ed.2d 49, 106 S.Ct. 2399, 2409-2410 (1986); E.E.O.C. v. Gaddis, 733 F.2d 1373, 1380 (5th Cir. 1984); Spirt v. Teachers Ins. & Annuity Ass'n, 691 F.2d 1054, 1063 (2d Cir. 1982), vacated and remanded sub nom. Long Island Univ. v. Spirt, 463 U.S. 1223 (1983), reinstated on remand, 735 F.2d 23 (2d Cir.), cert. denied, 469 U.S. 881 (1984); EEOC v. Foster Wheeler Constructors, Inc., No. 98 C 1601, 1999 WL 515524 at *3-4 (N.D. Ill. July 14, 1999); Carparts, 37 F.3d at 18 (1st Cir. ); Sibley Memorial Hosp. v. Wilson, 488 F.2d 1338, 1341 (D.C. Cir. 1973); Christopher v. Stouder Memorial Hospital, 936 F.2d 870, 875 (6th Cir. 1991); cert. denied, 112 S.Ct. 658 (1991); Doe on Behalf of Doe v. St. Joseph's Hosp. 788 F.2d 411, 422 (7th Cir. 1986).

**INSTRUCTION NO. 8: OWNER OF CORPORATE ENTITY UNDER STATE LAW**

Under state law (in this case the New York State Human Rights Law). and only state law, an owner of an entity may be held individually liable under the Human Rights Law, provided the owner has the power to do more than carry out personnel decisions made by others. Courts evaluating the role of the owner have considered the owner may be held individually liable if the owner had "power of dismissal over the employee," and/or the "power to control the employee's conduct…." and that he actually participated in the retaliation.

> Patrowich v. Chemical Bank, 63 N.Y.2d 541, 542 (1984). Cater v. New York, 316 F. Supp. 3d 660, 674 (S.D.N.Y. 2018) (internal quotation marks and citations omitted). Doe v. Bloomberg, L.P., 36 N.Y.3d 450, 167 N.E.3d 454, 143 N.Y.S.3d 286 (2021).

**INSTRUCTION NO. 9: IMPORTANCE OF IMPARTIALITY**

All parties to a civil lawsuit are equal before the Court and are equally entitled to a fair trial. Therefore, you must make fair and impartial decisions in order to arrive at a just verdict.

Under your oath as jurors, you are to be guided solely by the evidence (or lack of evidence) presented during the trial, as well as the applicable law, without regard to your feelings, positive or negative, for any party or attorney. All parties are entitled to the same fair and conscientious consideration. No party is entitled to any favor or special consideration. If you let sympathy or bias interfere with your clear thinking, then there is a risk that you will not arrive at a just verdict.

> Hon. Engelmayer, <u>Diaz v. Diaz</u>, 14-cv-4716-PAE (S.D.N.Y. Feb. 3, 2016).

**INSTRUCTION NO. 10: BURDEN OF PROOF**

I will now explain some basic principles that will, I believe, help you to analyze some of the evidence you are about to hear. As this is a civil case, Plaintiff Domingues has the burden of proving her claims by a preponderance of the evidence. This means the plaintiff has the burden of proving by a preponderance of the evidence each of her six claims (four against Barton Chevrolet and two against Ron Barton). If you find that Plaintiff has failed to establish a claim by a preponderance of the evidence, you must decide against her on that particular claim.

To establish a fact by a preponderance of the evidence means to prove that the fact is more likely true than not true. A preponderance of the evidence means the greater weight of the evidence. It does not mean the greater number of witnesses or the greater length of time taken by either side. The phrase refers to the quality of the evidence, that is, its persuasiveness, the weight and effect that it has on your minds. In determining whether a claim has been proven by a preponderance of the evidence, you may consider the relevant testimony of all the witnesses, regardless of who may have called them, and all the relevant exhibits received in evidence regardless of who may have produced them.

The concept of a preponderance of the evidence is often illustrated with the idea of scales. You put on one side all the credible evidence favoring Plaintiff and on the other side all the credible evidence favoring the Defendants. If the scales tip in favor of Plaintiff because Plaintiff's evidence is weightier, you must find in Plaintiff's favor. But if the scales are evenly balanced or they tip in Defendants' favor you must find for Defendants. Remember, Domingues has the burden of proof on her claims, and each defendant has the burden of proof on its affirmative defenses.

In determining whether any fact in issue has been proved by a preponderance of the evidence in the case, you the jury may, unless otherwise instructed, consider the testimony of all witnesses, regardless of who may have called them and all exhibits received in evidence, regardless of who may have produced them.

Some of you no doubt have heard of "proof beyond a reasonable doubt." That is the standard of proof that must be used in a criminal trial.  Plaintiffs in civil cases do not have to satisfy that requirement, and you should put it out of your mind.

> Adapted from Devitt, Blackmar & Wolff, <u>Federal Jury Practice and Instructions</u> (4th Ed. 1987), § 72.01; <u>Ostrowski v. Atlantic Mut. Ins. Companies</u>, 968 F.2d 171, 187 (2d Cir. 1992). Instruction of Hon. Richard M. Berman, <u>Lane v. Collins & Aikman Floorcoverings Inc</u>.

**INSTRUCTION NO. 11: WHAT IS EVIDENCE**

As I have said, in determining the facts, you must rely upon your own recollection of the evidence. What is evidence? Evidence consists of the sworn testimony of the witnesses (regardless of who has called them), the exhibits that have been received into evidence (regardless of who may have sought to have them admitted into evidence) and any stipulations, such as the Stipulated Facts which I read to you. By contrast, what counsel have said in their opening statements, questions, and objections, as well as what they may say in their closing arguments, is *not* evidence. Also, anything that I have said or may say about the facts, as well as anything you have heard outside the courtroom is *not* evidence.

You should bear in mind that a *question* put to a witness is *never* evidence; it is only the *answer* that is evidence. At times, a questioner may have incorporated into a question a statement that assumed certain facts to be true and asked the witness if the statement was true. If the witness denied the truth of a statement, and if there is no direct evidence in the record proving that assumed fact to be true, then you may not consider it simply because it was contained in a question. Asking whether a witness took some particular action on a particular day does not mean that that witness did that on the particular day.

You also may not consider any answer that I directed you to disregard or any answer that I directed be stricken from the record and ignored by you. Also, if certain testimony was received for a limited purpose, then you must follow the limiting instructions that I have given you.

Exhibits that have been marked for identification are not evidence unless they have been received in evidence by the Court. Materials showed to a witness only to refresh a witness's memory are also not evidence.

16

Arguments made by the attorneys are not evidence. If your recollection of the facts differs from the statements made by attorneys in their arguments, then it is your recollection that controls.

Also, the fact that I may have commented during the course of the trial or asked questions of witnesses does not indicate any feeling of mine about the facts or the credibility of any witness. I have no such feelings, and my comments were intended only to clarify the issue at hand. You should draw no inference or conclusion of any kind, favorable or unfavorable, with respect to any witness or any party because of any comment, question, or instruction of mine. It is for you alone to decide the credibility of the witnesses and the weight, if any, to be given to the testimony you have heard and the exhibits you have seen.

Lastly, anything that you may have seen or heard when the Court was not in session is not evidence. You are to decide the case solely on the evidence that is presented to you in this courtroom.

> Hon. Leonard B. Sand, et al., Modern Federal Jury Instructions,
> Instruction 74-1 What Is and Is Not Evidence (2014) (modified)

**INSTRUCTION NO. 12:  DIRECT AND CIRCUMSTANTIAL EVIDENCE**

You will hear and see evidence in this case. That evidence can be testimony from a witness or it can be in the form of documents and other exhibits that have been "received into evidence."

There are two kinds of evidence: direct and circumstantial.

**Direct evidence** is direct proof of a fact, such as testimony by a witness about what that witness personally experienced through his or her own senses; in other words, something seen, felt, touched, heard or tasted. Direct evidence also includes a document which states a fact; for example, a document from a supervisor stating that he or she was going to fire an employee because the employee became pregnant.

Direct evidence may also be in the form of an exhibit where the fact to be proven is its present existence or condition. Direct evidence would be a document from a supervisor stating that he or she was going to fire an employee because of the employee's gender. Direct witness evidence would be if a witness testifies that he or she participated in or heard a particular conversation. Even with direct witness testimony and documents, you still must consider the "credibility" and "weight" of the evidence, and I will explain more about credibility and weight shortly. For now, please remember that you are permitted to disbelieve the witness's testimony if you do not find the witness credible, that is, if you do not find the witness believable. Even if your believe a particular witness or validity of a document, you may assign it document little, substantial or some other "weight."

Direct evidence in proving employment discrimination is rare. Plaintiffs are not required to produce direct evidence of defendants' discrimination.

**Circumstantial evidence** is evidence that tends to prove a disputed fact by proof of other facts. Here is an example of circumstantial evidence: Suppose that in this courtroom there were

no windows so you could not see what the weather was like outside, and when you came in this morning it was a fine, sunny day. We go ahead with the trial for two or three hours and then the courtroom door opens and in comes a person wearing a dripping raincoat and carrying a dripping umbrella. You cannot see or hear what the weather is like outside, but from your observation of this person with the dripping raincoat and umbrella, you may draw an inference as to what has happened to the weather outside. This is an example of circumstantial evidence. It consists of circumstances which by common experience one may reasonably infer an ultimate fact sought to be established.

This example of circumstantial evidence is also an example of what the law means when it speaks of inferring one fact from another. An inference is the deduction or conclusion that reason and common-sense prompt a reasonable mind to draw from facts that have been proven by the evidence. Not all logically possible conclusions are legitimate or fair inferences. Only those inferences to which the mind is reasonably led or directed are fair inferences from direct or circumstantial evidence in the case. Whether or not to draw a particular inference is of course a matter exclusively for you, as are all determinations of fact.

Circumstantial evidence is of no less value than direct evidence; the law makes no distinction between direct evidence and circumstantial evidence but simply requires that your verdict be based on a preponderance of all evidence presented. "Preponderance of the evidence," as I explained earlier, simply means that something is "more likely than not" and is the standard applied in a civil trial such as this. (Remember that "beyond a reasonable doubt" has no application in a civil trial.)

It is for you to decide whether a fact has been proven by circumstantial evidence. In making that decision, you must consider all the evidence related to the fact in light of reason,

common sense, and your experience.

Adapted from Devitt, Blackmar & Wolff, <u>Federal Jury Practice and Instructions</u> (4th Ed. 1987), §71.04; Preliminary Instruction No. 1.4, The Honorable John L. Kane, Jr., District of Colorado, Jury Instruction Book;Instructions of Hon. Richard M. Berman, <u>Da Silva v. Kinsho Int'l Corp</u>.; Devitt, Blackmar & Wolff, <u>Federal Jury Practice and Instructions</u> (4th Ed. 1987), §§ 72.03 and 72.04 (as modified).

**INSTRUCTION NO. 13:  DIRECT AND CIRCUMSTANTIAL EVIDENCE**

The law makes no distinction at all between direct and circumstantial evidence as to the degree of proof required. Each is accepted as a reasonable method of proof and each is respected for such convincing force as it may carry.

You are to consider only the evidence in the case. However, in your consideration of the evidence you are not limited to the bald statements of the witnesses. In other words, you are not limited solely to what you see and hear as witnesses testify. You are permitted to draw, from facts which you find have been proved, such reasonable inferences as seem justified in the light of your experience. To establish that defendants violated the law and discriminated and/or retaliated against Domingues, does not require her to produce a "smoking gun" or an admission of discrimination and/or retaliation by the Defendants. You can find from the circumstances, the timing, the statements, and your own common sense that defendants discriminated and/or retaliated or did not do so.

> Adapted from Devitt, Blackmar & Wolff, Federal Jury Practice and Instructions (4th Ed. 1987), §71.04; Preliminary Instruction No. 1.4, The Honorable John L. Kane, Jr., District of Colorado, Jury Instruction Book; Instructions of Hon. Richard M. Berman, Da Silva v. Kinsho Int'l Corp.; Devitt, Blackmar & Wolff, Federal Jury Practice and Instructions (4th Ed. 1987), §§ 72.03 and 72.04 (as modified).

**INSTRUCTION NO. 14: WEIGHT AND CREDIBILITY OF WITNESSES**

How should you appraise or weigh the testimony that has been presented? It is part of your job to decide how believable — that is, how credible — you find each witness's testimony to be. How do you determine where the truth lies? You should use all of the tests for truthfulness that you would use in determining matters of importance to you in your everyday life.

Your determination of the credibility, by which we mean the believability, of a witness very largely depends upon the impression that witness made upon you as to whether or not the witness was giving an accurate version of what happened. You, as jurors, are the sole judges of both the credibility or believability of the witnesses and of the weight their testimony deserves. You may be guided by the conduct of the witness or by the manner in which the witness testifies. You may consider the character of the testimony given, or evidence contrary to the testimony given. You may also consider the witness's relationship, if any, to the controversy or to the plaintiff or defendant; the manner in which the witness might be affected by the verdict; or the witness's bias or impartiality.

Consider the witness's ability to observe the matters as to which he or she has testified; and whether the witness impresses you as having an accurate recollection of these matters, and the strength or weakness of the witness's recollection as viewed in light of all the testimony and attendant circumstances in the case, and consider the reasonableness of the witness's statements.

Inconsistencies or discrepancies in the testimony of a witness, or between the testimonies of different witnesses, may or may not cause you to discredit such testimony. Two or more persons witnessing an incident or a transaction may see or hear it differently; innocent mis-recollection, like failure of recollection, is not an uncommon experience. In weighing the effect

of a discrepancy, always consider whether it pertains to a matter of importance or an unimportant detail, and whether the discrepancy results from innocent error or intentional falsehood.

I am not giving you an all-inclusive list. You may consider any factor that you believe bears upon a witness's credibility. You may, in short, accept or reject any portion of a witness's testimony. If, however, you decide to accept a witness's testimony, after considering it in light of all the evidence in this case, then you may give it whatever *weight*, if any, you find it deserves. The *weight* of the evidence is not determined by the *number* of witnesses testifying as to the existence or nonexistence of any fact. You may find the testimony of a smaller number of witnesses as to any fact is more credible than testimony of a larger number of witnesses to the contrary.

The question really is, how did the witness impress you? Did the witness's version appear straightforward and candid, or did the witness try to hide some of the facts? Is there a motive of any kind to testify falsely or to shade the testimony offered? In other words, you shall attempt to "size the person up," in common language, just as you would do in any important matter when you are trying to determine whether or not a person is being truthful, candid and straightforward.

When you walk into a courtroom as jurors you do not leave your common sense, your good judgment, or your experiences in life behind you. You carry those experiences and common sense with you into the jury box and into the jury room during your deliberations. Please remember, however, that you may *not* use your experience and common sense to *"fill in"* or *"create"* evidence that does not exist. You use your experience and common sense only to draw reasonable inferences from proven facts or to weigh and evaluate the evidence, or lack of evidence, provided during the trial.

One thing you should consider is any bias, hostility or affection that a witness may have shown for or against a party. It is your duty to consider whether the witness has permitted any such bias to color his or her testimony: If you find that it has, then you should view the witness's testimony with caution, weigh it with care, and subject it to close and searching scrutiny.

You should also consider any other interest or motive that the witness may have in cooperating with a particular party, as well as any interest the witness may have in the outcome of the case. Interest in the outcome of the case creates a motive to testify falsely and may sway a witness to testify in a way that advances his or her own interests. Therefore, you should accept the testimony of an interested witness with great care. Keep in mind, though, that it does not automatically follow that testimony given by an interested witness is to be disbelieved. There are many people who, no matter how strong their interest in the outcome of the case, would not testify falsely. It is for you to decide, based on your own perceptions and common sense, to what extent, if at all, the witness's interest has affected his or her testimony.

Additional factors you should consider are: the opportunity the witness had to see, hear and know the things about which he or she testified; the accuracy of the witness's memory; the witness's candor or lack of candor; the witness's intelligence; the reasonableness of the witness's testimony; and the testimony's consistency or lack of consistency with other credible testimony.

In other words, what you must try to do in deciding credibility is to size a witness up in light of the witness's demeanor, the explanations given, and all of the other evidence in the case. Always remember that you should use your common sense, your good judgment, and your own life experience.

If you find that any witness has willfully testified falsely to any material fact (that is, to an important matter), then the law permits you to disregard the entire testimony of that witness

based upon the principle that someone who testifies falsely about one material fact is likely to testify falsely about everything. You are *not required*, however, to consider such a witness as *totally unworthy of belief*. You may accept so much of the witness's testimony as you deem true and disregard what you feel is false.

It is quite legitimate for an attorney to try to attack the credibility of a witness; however, you are the sole arbiters of the facts, and therefore you must decide for yourselves which witnesses you will believe, what portion of their testimony you will accept, and what weight you will give to that testimony.

> Adapted from Devitt, Blackmar & Wolff, <u>Federal Jury Practice and Instructions</u> (4th Ed. 1987), §73.01.

## PART II: PRE- DELIBERATION INSTRUCTIONS

**INSTRUCTION NO. 15: INTRODUCTION**

Members of the jury, you have now heard all of the evidence in the case, as well as the final arguments of the parties. We have reached the point where you are about to undertake your final function as jurors. You have paid careful attention to the evidence, and I am confident that you will act together with fairness and impartiality to reach a just verdict in this case.

My duty at this point is to instruct you as to the law. It is your duty to accept these instructions as to the law and to apply them to the facts as you determine them, just as it has been my duty to preside over the trial and to decide what testimony and evidence was proper under the law for your consideration.

On these legal matters, you must take the law as I give it to you. If any attorney or witness has stated a legal principle different from any that I tell to you in my instructions, it is my instructions that you must follow.

You are to consider these instructions together as a whole; in other words, you are not to isolate or give undue weight to any particular  instruction.

I am now going to tell you about the law that you will have to apply to the facts as you find them. At the beginning of the trial, I gave you preliminary instructions on the law, primarily on general legal principles. Now I will give you the final instructions.

Christine Domingues brings two kinds of claims: First, she brings claims for discrimination on the basis of sex, in this case, sexual harassment, by her co-worker Lucy DiCresce. The law considers sexual harassment to be a category of discrimination based on sex.

Second, she brings claims for retaliation: that is, that the Defendants made the terms and conditions of her employment worse because she complained to the employer – that is, protested or opposed – Lucy DiCresce's sexual harassment.

I will first instruct you on the law you must follow to determine whether Christine Domingues has proven her discrimination claims. After that, I will instruct you on the law you must follow to determine whether Christine Domingues has proven her retaliation claims. Keep in mind that the law is quite clear that an employee may be able to prove BOTH her discrimination AND retaliation claims. **OR** the employee may be able to prove EITHER discrimination OR retaliation claims.

**INSTRUCTION NO. 16: TITLE VII AND THE NYSHRL AND SEXUAL HARASSMENT**

Plaintiff asserts claims of hostile work environment sexual harassment under Title VII and the New York State Human Rights Law. Sexual harassment is a form of sex discrimination under the law, and hostile work environment is one theory used to support a claim of sexual harassment. I will refer to Title VII of the Civil Rights Act of 1964 as "Title VII" or as the "federal law." I will refer to the New York State Human Rights Law as the "State Human Rights Law" or as the "State Law." These laws make it unlawful for an employer to intentionally discriminate against an employee in the terms and conditions of employment because of the employee's sex.

Specifically, Title VII (federal law) makes it unlawful for an employer: to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's sex. And the State Human Rights Law (state law) expressly makes it unlawful for an employer "because of an individual's . . . sex . . . to . . . discharge from employment such individual or to discriminate against such individual in compensation or in terms, conditions or privileges of employment."

Both Title VII (the federal law) and the State Human Rights Law (state law) prohibit the creation of a hostile work environment caused by harassment because of the employee's sex. I will explain more about hostile work environment shortly.

> Section 703(a)(1), 704(a) and 707(a) of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §2000e-2(a)(1); O'Malley, Grenig & Lee, Federal Jury Practice and Instructions, § 171.75 (6th ed. 2014) (modified); 42 U.S.C. § 2000e-2(a); N.Y. Exec. Law § 296(1)(a); Kotcher v.  Rosa & Sullivan Appliance Ctr., Inc., 957 F.2d 59, 62 (2d Cir. 1992) (quoting Meritor Savings Bank, FSB v. Vinson, 477 U.S. 57, 64-65 (1986).

**INSTRUCTION NO. 17: TITLE VII AND THE NYSHRL:  RETALIATION**

Both Title VII (the federal law) and the State Human Rights Law (state law) make it

unlawful for an employer to retaliate against an employee who engaged in protected activity by

"opposing" or "protesting" what the employee believes in good faith are the employer's

violations of Title VII and the State Human Rights Law. "Protected activity" includes "informal

complaints to supervisors, instituting litigation, or filing a formal complaint." I will return later

to a fuller discussion of retaliation under both the federal and State Law.

> Section 704(a) of Title VII of the Civil Rights Act of 1964, as
> amended, 42 U.S.C. §2000e-2(a)(1); N.Y. Exec. Law § 296(7);
> Littlejohn v. City of New York, 795 F.3d 297, (Title VII); Bermudez
> v. City of New York, 783 F. Supp. 2d 560, 575; Conklin v. Cnty. of
> Suffolk, 859 F. Supp. 2d 415, 424 (E.D.N.Y. 2012);  Cruz v. Coach
> Stores, Inc., 202 F.3d 560, 566 (2d Cir. 2000); Giscombe v. N.Y.C.
> Dep't of Educ., 39 F. Supp. 3d 396, 401 (S.D.N.Y. 2014) (citations
> and internal quotations omitted).

**INSTRUCTION NO. 18: OVERVIEW OF THE CLAIMS IN THIS CASE; USE OF PREPONDERANCE OF EVIDENCE STANDARD**

I will now give you an overview of the claims Plaintiff Christine Domingues has brought. After that, I will explain to you each of the elements that she must prove for each of her claims, beginning with her sex discrimination (hostile work environment claims) and then I will explain her retaliation claims. Before you heard any evidence, I explained that a corporation acts through its directors, officers, employees and/or agents, and their actions can make the corporation liable for certain acts under both the federal and the state law. At that time, I also instructed you that, under State Law, an owner who meets certain requirements may be held individually liable.

Domingues has brought claims for discrimination and for retaliation under both the federal law (Title VII) and the state law (the State Human Rights Law) against Defendant Barton Chevrolet, for a total of eight claims against Barton Chevrolet as follows:

• discrimination (sexual harassment) under Title VII (the federal law);

• three retaliation claims under Title VII (the federal law);

• discrimination (sexual harassment) under the State Human Rights Law (the state law); and

• three retaliation claims under the State Human Rights Law (the state law).

Domingues also has brought four claims under state law against Ron Barton, the sole owner of the car dealership, under the state law: one for discrimination and three for retaliation. Thus Plaintiff Domingues has twelve claims in all.

Courts that apply the New York State Human Rights Law adopt the standards and reasoning that apply in the enforcement of Title VII.

Each claim has "elements." Christine Domingues, as the Plaintiff in this case, that is, the person suing, must prove each element of each claim by "a preponderance of evidence," which basically means "more likely than not"; that is, the evidence must show that it is "more likely than not" that the facts you "find" as the jury, and which are necessary to support the claim, are the facts which occurred.

This means that if you find that Domingues has proven, by a preponderance of the credible evidence, each element of a particular claim against Defendant Barton Chevrolet your verdict must be for Christine Domingues and against Barton Chevrolet on that claim. On the other hand, if Domingues has not carried her burden of proof with respect to any one of the essential elements of a particular claim, your verdict must be for Defendant Barton Chevrolet."

Similarly, if you find that Domingues has proven, by a preponderance of the credible evidence, each element of a particular claim against Defendant Ron Barton, your verdict must be for Domingues and against Ron Barton on that claim. On the other hand, if Domingues has not carried her burden of proof with respect to any one of the essential elements of a claim against Ron Barton, your verdict must be for Defendant Ron Barton on that claim.

> O'Malley, Federal Jury Practice and Instructions (hereafter "O'Malley"), Vol. 3, § 104.01; Vol. 3C, § 170.20 (adapted); American Bar Association, Section of Litigation, Employment and Labor Relations Law Committee, Employment Litigation Model Jury Instructions, 2005 ed., (hereinafter "Employment Litigation Model Jury Instructions"), § 1.02[1] (adapted).

**INSTRUCTION NO. 19: ELEMENTS OF HOSTILE WORK ENVIRONMENT**

As Domingues has decided to pursue her claim for sex discrimination on the theory that the sex discrimination created a "hostile work environment," I will now instruct you on the elements of Domingues's hostile work environment discrimination claims in further detail.

In order to prevail on her hostile work environment discrimination claims against Defendant Barton Chevrolet under both the federal (Title VII) and the state law (New York State Human Rights Law), Domingues must prove by a preponderance of the evidence the following:

1. She was subjected to unwelcome harassment;
2. That was objectively and subjectively severe **OR** pervasive
3. So as to alter a term or condition of her employment and create a hostile or abusive work environment;
4. And was motivated, at least in part, by Plaintiff's membership in a protected class – in this case Plaintiff's sex; and
5. There is a basis for assigning or imputing the harassing conduct to the employer, meaning that the employer either knew or should have known about the harassing conduct.
   I will now explain these requirements in more detail.

> Meritor Savings Bank v. Vinson, 477 U.S. 57, 66-67 (1986) (quoting Redd v. N.Y. State Div. of Parole, 678 F.3d 166, 175 (2d Cir. 2012)); Trotta v. Mobil Oil Corp., 788 F.Supp. 1336, 1348 (S.D.N.Y. 1992); Meritor Saving Bank, at 67; Pucino v. Verizon Wireless Comm., Inc., 618 F.3d 112, 117 (2d Cir. 2011); Distasio v. Perkin Elmer Corp., 157 F.3d 55, 62 (2d Cir. 1998) (citing Van Zant v. KLM Royal Dutch Airlines, 80 F.3d 708, 715 (2d Cir. 1996)); Mendez-Nouel v. Gucci Am., Inc., 542 Fed. Appx. 12, 13 (2d Cir. 2013) (quoting Harris v. Forklift Sys., 510 U.S. 17, 21-22 (1993); Duch v. Jakubek, 599 F.3d 757, 762 (2d Cir. 2009), citing Feingold v. New York, 366 F.3d 138, 149-50 (2d Cir. 2004).

## INSTRUCTION NO. 20: HOSTILE ENVIRONMENT: OVERVIEW

The plaintiff (here, Domingues) "must demonstrate either that a single incident was extraordinarily severe, or that a series of incidents were 'sufficiently continuous and concerted' to have altered the conditions of her working environment."). In determining whether the level of workplace misconduct constitutes an actionable "hostile environment," no single factor is required and you must consider the totality of the circumstances. In doing so, relevant factors include the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether its effect on the employee's psychological well-being, However, the work environment does not need to be deemed "unendurable" or "intolerable" in order to have altered the conditions of Plaintiff's employment, and  the conduct need not seriously affect an employee's psychological well-being or lead the employee to suffer injury in order to meet this standard. Psychological harm is merely one relevant factor that can be taken into account in determining whether the employee actually found the environment abusive.

> Meritor Savings Bank v. Vinson, 477 U.S. 57, 66-67 (1986) (quoting Redd v. N.Y. State Div. of Parole, 678 F.3d 166, 175 (2d Cir. 2012)); Trotta v. Mobil Oil Corp., 788 F.Supp. 1336, 1348 (S.D.N.Y. 1992); Meritor Saving Bank, at 67; Pucino v. Verizon Wireless Comm., Inc., 618 F.3d 112, 117 (2d Cir. 2011); Distasio v. Perkin Elmer Corp., 157 F.3d 55, 62 (2d Cir. 1998) (citing Van Zant v. KLM Royal Dutch Airlines, 80 F.3d 708, 715 (2d Cir. 1996)); Mendez-Nouel v. Gucci Am., Inc., 542 Fed. Appx. 12, 13 (2d Cir. 2013) (quoting Harris v. Forklift Sys., 510 U.S. 17, 21-22 (1993); Duch v. Jakubek, 599 F.3d 757, 762 (2d Cir. 2009), citing Feingold v. New York, 366 F.3d 138, 149-50 (2d Cir. 2004).

**INSTRUCTION NO. 21: SEVERE OR PERVASIVE HARASSMENT: SEVERE**

The plaintiff must establish that the unwelcome harassment was so severe **OR** pervasive that it altered a term or condition of her employment and created a hostile or abusive work environment.

Note that the standard is severe **OR** pervasive, **NOT both.**

Therefore, the more severe the conduct, the less pervasive it must be for you to find that the harassment reaches the threshold of altering a term or condition of her employment and creating a hostile or abusive work environment. Likewise, the more pervasive the conduct, the less severe it must be for you to find that it affected a term or condition of employment.

As to the SEVERE threshold, multiple courts have ruled that direct contact with an intimate body part — such as a breast — constitutes one of the most severe forms of sexual harassment, even when that contact occurs only once.

There is no dispute that, on May 12, 2017, co-worker Lucy DiCresce, in fact touched Plaintiff's breast. Indeed, the parties, through their attorneys, stipulated — agreed — that she did.

Similarly, there is no dispute that this direct contact occurred only once. I am referring to this contact as the May 12 Incident.

The parties dispute, however, the nature of the contact during the May 12 Incident, that is, whether the "touching" was a "poke," a "grab," a "bounce," or a "touch." The parties also dispute whether and what DiCresce said during the May 12 Incident. You have to decide whose testimony you believe about the nature of the physical touching and what was said or not said.

It is well established that a single episode of sexual harassment can create a hostile work environment if that episode in fact "work[s] a transformation of the plaintiff's workplace."

Therefore, you may evaluate the degree and type of touching ("poke" "grab" "bounce") and the comments, if any, in order to determine whether the May 12 Incident altered Domingues's work environment for the worse so as to create a hostile environment.

You must find, by a preponderance of the evidence, is that "the harassment is of such quality or quantity that a reasonable employee would find the conditions of his employment *altered for the worse*." In making this determination you may take into account both direct and circumstantial evidence and consider the totality of the circumstances.

> Whidbee v. Gazarelli Food Specialties, Inc., 223 F.3d 62, 70 (2d Cir. 2000); Snell v. Suffolk Cnty., 782 F.2d 1094, 1103 (2d Cir. 1986); Meritor Savings Bank, FSB v. Vinson, 477 U.S. 57, at 69; Employment Litigation: Model Jury Instructions, Section of Litigation, American Bar Association § 1.04(2)(b)(1994 ed.)(citing 29 C.F.R. § 1604.11, Harris v. Forklift Sys., Inc., 510 U.S. 17, 20); Khan v. HIP Centralized Laboratory Services, Inc., 2007 WL 1011325, at *5 (E.D.N.Y. March 30, 2007). Redd v. New York State Division of Parole, 678 F.3d 166, 176 (2d Cir. 2012); Kaytor v. Elec. Boat Corp., 609 F.3d 537, 548 (2d Cir. 2010). Duch v. Jakubek, 599 F.3d 757, 762 (2d Cir. 2009), citing, Feingold v. New York, 366 F.3d 138, 149-50 (2d Cir. 2004; Harris v. Forklift Sys., Inc., 510 U.S. 17, 23 (1993). Terry v. Ashcroft, 336 F.3d 128, 148 (2d Cir. 2003); Alfano v. Costello, 294 F.3d 365 (2d Cir. 2002); Cruz v. Coach Stores, 180 F.3d 426, 437 (2d Cir. 1999); Howley v. Town of Stratford, 217 F.3d 141, 154 (2d Cir. 2000); Richardson v. N.Y. State Dep't of Corr. Servs., 180 F.3d 426, 437 (2d Cir. 1999).

**INSTRUCTION NO. 22: SEVERE OR PERVASIVE HARASSMENT: PERVASIVE**

You may find that the May 12 Incident in combination with or separate from other alleged verbal incidents was sufficiently pervasive to create an abusive working environment for Plaintiff Christine Dominguez. Particularly in a hostile work environment claim, your job is to assess the totality of the circumstances, and not view the events in a piecemeal fashion. Thus, you may consider the events and comments and complaints that occurred before the May 12 Incident in order to decide whether those were sufficient to alter a term or condition of Plaintiff's employment for the worse such that Domingues has demonstrated a hostile work environment.

> Redd v. N.Y State Div. of Parole, 678 F.3d 166, 175-76 (2d Cir. 2012); Feingold v. New York, 366 F.3d 138, 150 (2d Cir. 2004); Alfano v. Costello, 294 F.3d 365, 374 (2d Cir. 2002); Agosto v. New York City Dep't of Educ., 982 F.3d 86, 102 (2d Cir. 2020); see also Oliver v. New York State Police, No. 15-CV-444, 2020 U.S. Dist. LEXIS 73284, 2020 WL 1989180, at *30 (N.D.N.Y. Apr. 27, 2020). Tolbert v. Smith, 790 F.3d 427, 439 (2d Cir. 2015). Kaytor v. Elec. Boat Corp., 609 F.3d 537, 548 (2d Cir. 2010)); Petrosino v. Bell Atlantic, 385 F.3d 210, 223-24; Newsday Inc. v. Long Island Typographical Union, No. 915, CWA, 915 F.2d 840, 844 (2d Cir. 1990).

**Plaintiff would restore the following as the first paragraph, which defendants removed, and which read:**

*Plaintiff has testified about multiple comments that Lucy DiCresce made about her breasts and their size and movement during April and May 2017. In short, even if you concluded that the May 12 Incident itself was not sufficiently severe to alter Christine Domingues's employment and create an abusive working environment, you may also evaluate whether DiCresce's statements about Domingues's breasts were made and the frequency (that is, the pervasiveness) of any such statements during April and May leading up to and including the May 12 Incident to determine whether a hostile environment was created. You may look at whether there were a series of incidents and comments which created a hostile work environment.*

**Plaintiff's version is a more accurate statement of the law and consistent with summary judgment decision. Without this paragraph, it is harder for the jury to understand the meaning of the phrase "totality of the circumstances" as well as the meaning of "pervasive."**

**INSTRUCTION NO. 23: OBJECTIVE AND SUBJECTIVE STANDARDS**

In proving the existence of a hostile work environment, Domingues must prove by a preponderance of the evidence that the unwelcome sexual harassment was *objectively and subjectively* severe **OR** pervasive so as to alter a term or condition of Domingues's employment and create a hostile or abusive work environment. I will now explain the requirements about viewing the hostile environment "objectively" and "subjectively."

"Objectively hostile" means that you, the jury, view the evidence from the perspective of a reasonable person's reaction to a similar environment under similar circumstances. Would a reasonable person — not an overly sensitive person, nor of someone who is never offended — in the same or similar circumstances as Plaintiff find the conduct offensive.

If you decide that a reasonable person would not want to have a co-worker touch her breast in the workplace — however you characterize the "touching" in light of the findings you make on the disputed facts related to this incident — and that a reasonable person would not want to have a co-worker make comments about the size and movements of her breasts in the workplace (depending on what you, the jury find), you may find that the workplace was objectively hostile.

"Subjectively hostile" requires you as the jury to consider the conduct from the Plaintiff's perspective; that is, at whether the Plaintiff actually finds the conduct offensive. Subjectively hostile means that the Plaintiff herself perceived the work environment to be hostile, abusive, or offensive.

To find hostile work environment, you must find that the sexual harassment was both "objectively" AND "subjectively" severe OR pervasive.

> <u>Harris v. Forklift Sys., Inc.</u>, 510 U.S. 17, 20, 23 (1993); <u>Torres v. Pisano</u>, 116 F.3d 625 (2d Cir. 1997); <u>Mendez-Nouel v. Gucci Am.</u>,

Inc., 542 Fed. Appx. 12, 13 (2d Cir. 2013) (quoting <u>Harris v. Forklift Sys.</u>, 510 U.S. 17, 21-22 (1993); <u>Meritor Savings, FSB v. Vinson</u>, 477 U.S. 57. 63-68 (1986) (internal quotation marks and citations omitted) ("[F]or sexual harassment to be actionable, it must be sufficiently severe or pervasive — both subjectively and objectively — to alter the conditions of [the victim's] employment and create an abusive working environment."); <u>Oncale v. Sundowner Offshore Servs., Inc.</u>, 523 U.S. 75, 81 (1998).

**Plaintiff would re-insert the following paragraph as the fifth paragraph in this instruction:**

*If you find that Domingues was offended by DiCresce's conduct — whether that consists of "touching" or more than merely "touching," such as "poking" or "grabbing" or "bouncing" and/or with what you find as to the "comments" made during the May 12 Incident, and/or leading up to it — you may find that the workplace was subjectively hostile.*

**The verbs (touching, poking, grabbing, bouncing) are in the deposition transcripts of Domingues as she re-counts Barton's conversations with her on August 9. Barton complained to Domingues that she was changing her story by using those different verbs. In either event, it reflects Domingues's subjective view of the incident, and further highlights the meaning of the subject standard which is necessary for finding harassment.**

**Plaintiff would delete the phrase *"from the perspective of"* from paragraph 2, line 3 of the instruction.**

**INSTRUCTION NO. 24: "UNWELCOME HARASSMENT"**

To prove her hostile work environment sexual harassment claim, Plaintiff must provide that she was subjected to "unwelcome harassment." To do so, Domingues must have clearly made her co-workers and superiors aware that in the future such conduct would be considered "unwelcome." As the jury, you must determine whether Domingues made clear the conduct was "unwelcome harassment" in light of the record as a whole and the totality of the circumstances.

Meritor Savings Bank v. Vinson, 477 U.S. 57, 68-69 (1986); 29 CFR § 1604.11(a) (1985); Shan Zhao v. Kaleida Health, 2007 U.S. Dist. LEXIS 103253 (W.D.N.Y. 2007), Carr v. Allison Gas Turbine Div., Gen. Motors Corp., 32 F.3d 1007, 1011 (7th Cir. 1994).

**Plaintiff objects to defendants having cut out all but the first five lines of Jury Instruction**

**24 as follows:**

*This means that even if you, as the jury, found credible any testimony that Domingues herself made off-color jokes and/or participated in office banter, that does not mean that Domingues found DiCresce's conduct and comments the day of the May 12 Incident "welcome." You may still conclude that the May 12 Incident was unwelcome sexual harassment.*

*You may consider Domingues's testimony that she found Lucy DiCresece's statements and actions to be humiliating and embarrassing. In determining the unwelcomeness, you may also take into account the number of times Domingues reported DiCresce's behavior to her supervisor (Milkovich), to DiCresce's supervisor (Mayer), to Jessica Barton, and ultimately to defendant Ron Barton. The Stipulated Facts state that: (1) on May 12 or 13, 2017, Domingues reported DiCresce's conduct to her own supervisor, Milkovich; (2) on May 12, 2017 (the same day as the May 12 Incident), Domingues reported the Incident to Don Mayer, DiCresce's supervisor; (3) Mayer reprimanded DiCresce and sent her home for the rest of the day but did not dock her pay; (4) neither Mayer nor anyone else docked DiCresce's pay; and (5) that Domingues reported the May 12 Incident to Ron Barton on August 9, 2017.*

*As these are Stipulated Facts, you must take them as true.*

*As a jury, you may decide that these Stipulated Facts are sufficient to conclude in and of themselves that the conduct was "unwelcome harassment."*

*However, if you as the jury find the Stipulated Facts insufficient to make the determination that Plaintiff was subjected to "unwelcome harassment," then you must consider the disputed facts, and make findings as to them, in order to determine whether Plaintiff was subjected to "unwelcome harassment." These include the ample testimony regarding comments made, complaints made, and comments and complaints responded to or ignored before, during, and after the May 12 Incident on May 12, 2017.*

*Even if you do not need to consider these additional comments in order to determine "unwelcomeness," you may need to consider them in order to determine whether Plaintiff has proven her hostile work environment claim by a preponderance of the evidence.*

It is important to keep in front of the jury what facts are "Stipulated" as opposed to what facts are disputed and they are required to find. It bears explaining that the jury can use the Stipulated Facts in conjunction with the facts it may find in reaching its conclusions.

**INSTRUCTION NO. 25: ON THE BASIS OF GENDER**

Plaintiff must also establish, by a preponderance of the evidence, that she was harassed, in part, based upon her sex. Plaintiff's status that she is in a protected class based upon her sex (the discrimination laws only protect employees in their employment based on their membership in a protected class, such as race or sex) need not be the *only* factor that motivated the harassment. Further, Plaintiff does not need to produce direct evidence that her sex motivated Defendant's conduct. Rather, you may reasonably consider facially neutral incidents in light of the totality of the circumstances to find that Plaintiff's sex played a role in motivating Defendant's conduct.

Motivated by "sex" is different from "sexual." Plaintiff need not demonstrate that the harassing conduct was motivated by sexual desire, as long as it was motived by gender.

This concludes my instructions on the requirements for determining whether there was a "hostile work environment," meaning that Plaintiff was subjected to unwelcome harassment that was objectively and subjectively severe **OR** pervasive so as to alter a term or condition of her employment and create a hostile or abusive work environment; and was based, at least in part, by Plaintiff's sex.

Oncale v. Sundowner Offshore Services, Inc., 523 U.S. 75, 80 (1998); Harris v. Forklift Systems, 114 S.Ct. 367 (1993); Meritor Sav. Bank v. Vinson, 477 U.S. 57, 65-69 (1986); Kotcher v. Rosa and Sullivan Appliance Ctr., Inc., 957 F.2d 59, 62-63 (2d Cir. 1992); Carrero v. New York City Hous. Auth., 890 F.2d 569, 577-78 (2d Cir. 1989); Snell v. Suffolk County, 782 F.2d 1094, 1102 (2d Cir. 1986); Richardson v. New York State Dep't of Correctional Serv., 180 F.3d 426, 442-43 (2d Cir. 1999); Holsey v. Armour & Co., 743 F.2d 199, 207 (4th Cir. 1984), cert. denied, 470 U.S. 1028 (1985); Rogers v. EEOC, 454 F.2d 234, 237 (5th Cir. 1971), cert. denied, 406 U.S. 957 (1972); Hunter v. Allis-Chalmers Corp. Engine Div., 797 F.2d 1417, 1423 (7th Cir. 1986); Daniels v. Fowler, 57 Fair Empl. Prac. Cas. (BNA) 65, 70 (N.D. Ga. 1991), aff'd, 1992 U.S. App. LEXIS 14100 (11th Cir. 1992);

Mullen v. Princes Anne Fire Co., 846 F.2d 846, 847 (4th Cir. 1988); Stewart v. Peat, Marwick, Mitchell & Co., 52 Fair Empl. Prac. Cas. (BNA) 445, 451-52 (S.D.N.Y. 1989); Henson v. City of Dundee, 682 F.2d 897, 903, 910 (11th Cir. 1982); Alfano v. Costello, 294 F.3d 378 (2d Cir. 2002); Kaytor v. Electric Board Corp., 609 F.3d 537, 547 (2d Cir. 2010).

**INSTRUCTION NO. 26: LIABILITY OF EMPLOYER**

In a case of co-worker harassment, "the employer will be held liable only for its own negligence. An employer is negligent with respect to sexual harassment if it knew or should have known about the conduct and failed to stop it. Moreover, an employer's action must be effectively remedial and *prompt*.

"Imputed to the employer" means that the employer had knowledge of the incident when notice is given to an official who is (1) sufficiently high level in the company's management hierarchy to qualify as a proxy for the company OR (2) is charged with a duty to act on the knowledge and stop the harassment OR (3) is charged with a duty to inform the company of the harassment."

Appropriate remedial action is action which makes the harassment stop.

> Duch v. Jakubek, 588 F.3d 757, at 762-63 and 766. Distasio v. Perkin Elmer Corp., 157 F.3d 55, 64 (2d Cir. 1998); Burlington Industries, Inc. v. Ellerth, 524 U.S. 742, 759, 118 S.Ct. 2257 (1998); accord Howley v. Town of Stratford, 217 F.3d 141, 154 (2d Cir. 2000); Perry v. Ethan Allen, 115 F.3d 143, 153 (2d Cir. 1997); Torres v. Pisano, 116 F.3d 625, 636-47 (2d Cir. 1997). Adapted from Devitt, Blackmar & Wolff, §§ 71.08 and 71.09 (as modified); Eighth Circuit Manual of Model Civil Jury Instructions, (1998 Ed.) § 8.01; Itel Containers Corp. et al. v. Atlanttrafik Ltd. et al., 909 F.2d 698, 701-702 (2d Cir. 1990).

**Plaintiff would add the following paragraph as paragraph 3:**

*You have heard divergent testimony from the witnesses about whether Domingues made any complaints before May 12 or 13 to anyone. You have also heard testimony as to who Domingues may have or may have not made those complaints and as to whom that may have been, and their management level.*

**Plaintiff would also add the following language after the sentence: "Appropriate remedial action is action which makes the harassment stop":**

*The additional question for you as jurors is whether either or both defendants failed to take appropriate remedial action, once they knew of the unwelcome harassment.*

*This will require you to evaluate the testimony you have heard and determine whose testimony you believe.*

**INSTRUCTION NO. 27: RETALIATION CLAIM: OVERVIEW**

Before instructing you specifically about retaliation, a word about the relationship between an employee's discrimination claims and the employee's retaliation claims is in order.

In determining employer liability for retaliation claims, courts look at the *retaliatory* conduct, ***not*** the underlying discrimination claims. That is why I said at the outset that Domingues may be able to prove discrimination but not retaliation; retaliation but not discrimination; or neither; or both. In Domingues's case, it is irrelevant as a matter of law that the retaliation was not "sexual harassment." What is relevant is whether the harasser engaged in the retaliation of which Domingues complains for Domingues having protested or opposed what Domingues believed was sexual harassment. That is because the primary purpose of the anti-retaliation provisions under both state and federal law is to "[m]aintain unfettered access to statutory remedial mechanisms."

> Burlington Northern & Santa Fe v. White, 548 U.S. 53, 68, 126 S. Ct. 2405, 165 L. Ed. 2d 345 (2006); Robinson v. Shell Oil Co., 519 U.S. 337, 346, 117 S. Ct. 843, 136 L. Ed. 2d 808 (1997); Rivera v. Genesee Regional Transportation Auth., 743 F.3d 11, 25 (2d Cir. 2012); Galabya v. N.Y.C. Bd. of Educ., 202 F.3d 636, 640 (2d Cir. 2000); Potash v. Fla. Union Free Sch. Dist., 972 F. Supp. 2d 557, 583 (S.D.N.Y. 2013); Little v. NBC, 210 F. Supp. 2d 330, 384 (S.D.N.Y. 2002).

**Plaintiff objects to the last paragraph having been omitted by defendants and would like it re-inserted:**

> ***This will require you to evaluate the testimony you have heard and determine whose testimony you believe. If you decide that you believe Domingues and disbelieve Defendants' or DiCresce or other defendants' witnesses' testimony, you may find that Domingues has proven some or all of her retaliation claims.***

**The deleted part of this instruction highlights for the jury that they have to make determinations regarding disputed facts.**

**JURY INSTRUCTION NO. 28: RETALIATION CLAIM ELEMENTS 1 AND 2**

These are the elements for a retaliation claim under state and federal law A claim for retaliation under federal law (Title VII) and state law (NYSHRL) exists where (1) the employee engaged in protected activity; (2) the employer was aware of that activity; (3) the employee suffered a material adverse action; and (4) there was a causal connection between the protected activity and the adverse action.

The parties have Stipulated that Domingues complained to her supervisor Robert Milkovich, DiCresce's supervisor Don Mayer, and owner  defendant Ron Barton, among others. Therefore there are no facts for you to find as to these first two requirements and you must find in favor of Domingues on them.

Lore v. City of Syracuse, 670 F.2d 127, 157 (2d Cir. 2012); Reed v. A.W. Lawrence & Co., 95 F.3d 1170, 1178 (2d Cir. 996). Duch v. Jakubek, 588 F.3d 757, 763 ), quoting, Torres v. Pisano, 116 F.3d 625, 636-47 (2d Cir. 1997) (internal citations and footnote omitted). Burlington Northern & Santa Fe v. White, 548 U.S. 53, 68, 126 S. Ct. 2405, 165 L. Ed. 2d 345 (2006); Rivera v. Genesee Regional Transportation Auth., 743 F.3d 11, 25 (2d Cir. 743 F.3d at 25; Galabya v. N.Y.C. Bd. of Educ., 202 F.3d 636, 640 (2d Cir. 2000); Potash v. Fla. Union Free Sch. Dist., 972 F. Supp. 2d 557, 583 (S.D.N.Y. 2013); Little v. NBC, 210 F. Supp. 2d 330, 384 (S.D.N.Y. 2002).

**JURY INSTRUCTION NO. 29: MATERIAL ADVERSE EMPLOYMENT ACTION**

The third element is whether Domingues suffered a materially adverse employment action. An action is materially adverse when it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination. In other words, the standard for determining whether an employee has suffered a materially adverse employment action is an objective one.

For a change in work duties to amount to a materially adverse employment action the new assignment must be "more disruptive than a mere inconvenience or an alteration of job responsibilities," and other courts have ruled that the following — among other things — constitute adverse employment actions: "denial of promotion, addition of responsibilities, involuntary transfer that entails objectively inferior working conditions, denial of benefits, denial of a requested employment accommodation, denial of training that may lead to promotional opportunities, and shift assignments that make a normal life difficult for the employee," among other things, constitute adverse employment actions.

> Burlington Northern & Santa Fe v. White, 548 U.S. 53, 6868, 126 S. Ct. 2405, 165 L. Ed. 2d 345 (2006); Rivera v. Genesee Regional Transportation Auth., 743 F.3d 11, 25 (2d Cir. 2012); , 743 F.3d at 25; Galabya v. N.Y.C. Bd. of Educ., 202 F.3d 636, 640 (2d Cir. 2000); Potash v. Fla. Union Free Sch. Dist., 972 F. Supp. 2d 557, 583 (S.D.N.Y. 2013); Little v. NBC, 210 F. Supp. 2d 330, 384 (S.D.N.Y. 2002); Murray. V. Dutchess Cty. Exec. Branch, 2019 US. Dist. LEXIS 164511 (S.D.N.Y. 2019),  reconsideration denied by Murray v. Dutcavich, 2020 U.S. Dist. LEXIS 107040, 2020 WL 3318212 (S.D.N.Y., June 18, 2020), motion denied by Murray, 2021 U.S. Dist. LEXIS 103650 (S.D.N.Y., June 2, 2021).

**Plaintiff proposes the following:**

*Plaintiff contends that her transfer from the Sales Building to the Service Building — and the accompanying change in her job duties and inability to receive comparable compensation — constitute a materially adverse employment action. If you find that Plaintiff's in the Sales Building consisted of clerical tasks and did not include any physical labor, and you find that when she was transferred to the Service Building, she continued to do only a*

*minimal amount of clerical work, but her job largely consisted of "manual, physical work, lifting boxes and car parts," you may conclude that Plaintiff suffered a material adverse employment action. Additionally, if you find that while Plaintiff's hourly rate after her transfer, but she received less money because she could no longer work on Saturdays and receive overtime pay, you may also conclude that she suffered a material adverse employment action.*

*If you find the change in job duties paired with the reduction in hours and elimination of the opportunity to receive overtime pay constitute worse terms and conditions, you may find that Plaintiff was subject to a materially adverse employment action by the Transfer and its attendant circumstances. I have now explained the first three elements of Domingues's retaliation claim.*

**JURY INSTRUCTION NO. 30: PRETEXT**

Before I explain the fourth element of a retaliation claim — whether there was a causal connection between the material adverse employment action  (the Transfer and the new duties attendant to them) and Domingues's protected activity (complaining about the sexual harassment by DiCresce and possibly other harassment by DiCresce), I need to explain more about causal connection needed for Plaintiff to succeed or fail on her retaliation claim. I will do so now. The concept that I am going to explain is "pretext."

> Burlington Northern & Santa Fe Ry. Co. v. White, 548 U.S. 53 at 61 and 68 (2006); Kwan v. Andalex Group, LLP, 737 F.3d 834, 846-47; *EEOC Enforcement Guidance on Vicarious Employer Liability for Unlawful Harassment by Supervisors*, June 18, 1999, Part V(C)(1) "Assurance of Immediate and Appropriate Corrective Action"; Murray. v. Dutchess Cty. Exec. Branch, 2019 US. Dist. LEXIS 164511 (S.D.N.Y. 2019), reconsideration denied by Murray v. Dutcavich, 2020 U.S. Dist. LEXIS 107040, 2020 WL 3318212 (S.D.N.Y., June 18, 2020), motion denied by Murray v. Dutcavich, 2021 U.S. Dist. LEXIS 103650 (S.D.N.Y., June 2, 2021).

**Plaintiff proposes the clear, albeit detailed instruction as to what the jury must find as facts in order to make a finding that the Transfer was pretext:**

> *Plaintiff maintains that moving Domingues from the Sales Building to the Service Building, with its change to worser, physically challenging duties and lesser overall pay because she could not earn overtime pay was a demotion.  Plaintiff maintains that defendants took that action in retaliation for her having complained about DeCresce's sexual harassment. I will still refer to it as a "Transfer" since the parties don't agree as to what to call the change from working in the Sales Building to the Service Building.*
> *Defendants contend that they transferred Domingues from the Sales Building location to the Service Building out of concern for her safety — to allegedly make Domingues "safer" per Ronald Barton.*
> *Plaintiff contends that Defendants' retaliation — the Transfer —is a pretext to cover up the Defendants' real reason, namely retaliation against Domingues for having complained about sexual harassment by co-worker DiCresce, and that, had Plaintiff not complained of the hostile work environment sexual harassment, the transfer would not have occurred.*
> *To prove pretext, Plaintiff need only show that the Transfer was fraught with weaknesses, implausibilities, inconsistencies or contradictions in the employer's proffered legitimate, non-retaliatory reasons for its action, such that the explanation is just not credible.*

*From such discrepances, a reasonable juror could conlcude that the explanations given by the employer were a pretext for a prohibited reason.*

*You may also consider the reasons given for Domingues's Transfer to the Service Building position: How believable is Ron Barton's explanation that he could not move DiCresce to the Service Building because he could not break up the members of his BDC team? You may review issues raised about the number of team members of the BDC team in Service as compared to those in Sales, and as to how the work of any team members could be completed by telephone and/or in person and at what times or occasions.  You may consider whether the explanation about DiCresce's work and the inability to move her away from the BDC group in the Sales Group is not worthy of credence .*

*You may also consider other testimony about DiCresce's behavior after the May 12 Incident, and about Domingues's August 9 conversations with Ron Barton about the May 12 Incident, as well as any testimony about whether DiCresce's post-May 12 behavior was discussed during those August 9 conversations.   You may consider Ron Barton's evaluation of the situation in assessing Defendants' explanation of their transfer of Domingues to the Service Department job.*

*You may also consider the Stipulated Facts, including that Plaintiff made multiple complaints about DiCresce's sexual harassment and also first complained to Ron Barton in August 2017; that the day after that complaint to Ron Barton, he told Domingues he was transferring her to the Service Building; that Domingues was absent from work from August 11 through 31); and that, upon her return to work on September 1, she was transferred to the Service Building and to a largely physical, dangerous and worse paying position.*

*You may consider Domingues's testimony that she repeatedly complained in the three months before defendants' transferred her that DiCresce had engaged in threatening and retaliatory harassment after Domingues complained about the May 12 Incident, and whether defendants took action to stop DiCresce.  (I will explain more about what I mean about retaliatory harassment).  You may consider as well as defendants' prior conduct in how they responded to Domingues's  complaints before and soon after the May 12 Incident.*

*You may also consider whether moving the person who claimed discrimination to a new job position instead of the harasser disregards the rights of the individual harassed and is not an "effective remedial action."*

*These are just some of the disputed issues that you must decide in order to determine whether Defendant Barton Chevrolet's and Ron Barton's stated reasons for transferring Domingues were merely pretext to cover up their retaliatory motive.*

**JURY INSTRUCTION NO. 31: BUT-FOR CAUSATION**

Plaintiff Domingues must prove that there was a causal connection between the protected activity (her complaints about sexual and any other harassment you may find she made) and the adverse employment action (her being transferred to the Service Building with its change to worser duties and lesser overall pay).

How much proof does Domingues to succeed on proving her retaliation claim? In order to prove her retaliation claim, Domingues must prove but-for causation. But-for causation does not mean that the only reason Domingues was transferred was because of her Complaints to other managers and to Ron Barton. Rather, it means that she would not have been transferred had she not made those complaints, and any others you may find occurred.

> Burlington Northern & Santa Fe Ry. Co. v. White, 548 U.S. 53 at 61 and 68 (2006); Kwan v. Andalex Group, LLP, 737 F.3d 834, 846-47; *EEOC Enforcement Guidance on Vicarious Employer Liability for Unlawful Harassment by Supervisors*, June 18, 1999, Part V(C)(1) "Assurance of Immediate and Appropriate Corrective Action." Chamberlin v. Principi, 247 Fed. Appx. 251, 254 (2d Cir. 2007) (finding that the causal connection needed for a prima facie case can  be established by showing that the protected activity was closely followed in time by the adverse action.)(internal citation omitted);  Lovejoy-Wilson v. NOCO Motor Fuel Inc., 263 F.3d 208, 224 (2d Cir. 2001); Domingues v. Barton Chevrolet Cadillac, 2019 U.S. Dist. LEXIS 29425 (S.D.N.Y. 2017).

**Plaintiff objects to defendants eliminating the timeline: that is, that Ron Barton decided to move Plaintiff, not DiCresce, the day he learned of the harassment, and moved Plaintiff the day she returned from a three-week absence, starting the day after her meetings with Ron Barton. While it is possible to eliminate some of the details, it is misleading to eliminate all of them, particularly Ron Barton's timeline. Plaintiff proposes the following additional instruction:**

*Defendants argue that Plaintiff was transferred to prevent additional interactions between Plaintiff and DiCrese, and to make her feel "safer," and not because she had complained about sexual harassment or any other later harassment. It is for you as the jury to*

*decide whether Plaintiff would not have been transferred to the Service Building but for her complaints. It is Stipulated that Plaintiff made several complaints to her supervisors Milkovich and Mayer before the May 12 Incident, and informed Ron Barton about the May 12 Incident on August 9, 2017. Stipulated Fact #12. Plaintiff contends that she made additional complaints to other managers before August 9, 2017, and that DiCresce had engaged in threatening behavior against her.*

*Plaintiff then did not come to work for approximately three weeks after her complaints to Ron Barton on August 9 and August 10. Upon her return, Barton transferred Plaintiff from the Sales Building to the Service Building. In this case, the Parties have stipulated that the decision to Transfer Domingues was made on August 9, 2017, the day she complained to Ron Barton, and took effect three weeks later, on the first day Domingues returned to work from an absence.*

*You can evaluate causation by looking to the time periods before the transfer, that is, from how soon after her complaint or complaints the transfer occurred. A straight line is easily drawn between these two events, and thus a jury could find that a causal connection has been established.*

**JURY INSTRUCTION NO. 32:  RETALIATORY HARASSMENT**

I will further instruct you as to two additional retaliation claims.

> Burlington Northern & Santa Fe Ry. Co. v. White, 548 U.S. 53 at 61
> and 68 (2006); LaFontant v. James Neale, et al., 2019 U.S. Dist.
> LEXIS 74331, * 22-23 (S.D.N.Y. 2019); Wise v. NYC Police
> Department, 928 F. Supp 355, 362-66 (S.D.N.Y. 1996); Spring v. City
> of New York, 2019 U.S. Dist. LEXIS 55094 * 8-10 (S.D.N.Y. 2019);
> Berkman v. City of New York, 580 F. Supp 226, 245 (S.D.N.Y. 1983);

**Plaintiff would restore this instruction by adding the following paragraph:**

*First, you must consider  whether and what communications Defendants made to Domingues's co-workers about how Domingues should be treated after her complaints. You have heard testimony that Barton Chevrolet and Ron Barton changed Domingues's working conditions by isolating her and instructing other employees not to speak with her because of a "conflict of interest" with the company not speak with her, and otherwise make the working environment after she complained of both sexual harassment and further alleged threats by DiCresce after Domingues's initial and continuing complaints. You are called upon to determine whether such retaliation occurred, and if so, whether such alleged treatment would act to discourage a reasonable employee from coming forward with complaints of harassment.*

**Plaintiff objects to defendants eliminating Domingues's isolation after she reported. The cut also eliminates the standard, that is, "whether such alleged treatment would act to discourage a reasonable employee from coming forward with complaints of harassment.**

**JURY INSTRUCTION NO. 33: CO-WORKER HARASSMENT**

Second, you have been previously instructed in connection with the sexual harassment of Domingues by DiCresce, that an employer will be held liable "if it knew or should have known about the conduct and failed to stop it. Moreover, an employer's action must be effectively remedial and *prompt*.

That same instruction applies Domingues's retaliation claims regarding DiCresce's conduct in the months **after** the May 12 Incident.

> Richardson v. NYS Dept. of Correctional Serv., 180 F.3d 426, 446 (2d Cir. 1999); Spring v. City of New York, 2019 U.S. Dist. LEXIS 55094 * 8-10 (S.D.N.Y. 2019); LaFontant v. James Neale, et al., 2019 U.S. Dist. LEXIS 74331, * 22-23 (S.D.N.Y. 2019); Wise v. NYC Police Department, 928 F. Supp 355, 362-66 (S.D.N.Y. 1996); Berkman v. City of New York, 580 F. Supp 226, 245 (S.D.N.Y. 1983); Burlington Northern & Santa Fe Ry. Co. v. White, 548 U.S. 53, 61 and 68 (2006).

**Plaintiff would restore the following cuts:**

*You are called upon to decide whether, after Defendant Barton Chevrolet sent DiCresce home following Domingues's reporting the May 12 Incident — a protected activity which was in compliance with Barton Chevrolet's own harassment policies — DiCresce began to retaliate against Domingues – including by bullying and threatening Domingues.*

*You have heard conflicting testimony about DiCresce's actions, including using obscenities; a demeaning epithet about retrieving coffee; repeatedly calling Domingues a "bitch"; stalking and bullying her in the parking lot and outdoor smoking area while speaking to Domingues about her complaints.  You must determine the evidence and the witnesses' credibility as to whether such harassing acts occurred.*

*In determining whether the above actions of DiCresce constitute retaliation, our courts look at the treatment, not the underlying discrimination claim in determining employer liability for retaliatory conduct. It is irrelevant as a matter of law that the retaliatory co-worker harassment was not "sexual harassment," so long as the harasser engaged in the complained of conduct in retaliation for the victim having engaged in protected activity. To make out a claim of retaliation the issues is whether the retaliation well might have "dissuaded a reasonable worker from making or supporting a charge of discrimination." This is because the primary purpose of the anti-retaliation provision is to "[m]aintain[] unfettered access to statutory remedial mechanisms."*

*Therefore, if you resolve the disputed facts underlying of these claims in favor of Plaintiff, you must find that Barton Chevrolet is liable as the employer because it did nothing to effectively get DiCresce's retaliatory harassment to abate, much less stop.*

**JURY INSTRUCTION 34: DAMAGES GENERALLY**

I am about to instruct you as to the proper measure of the damages that you will be considering. The fact that I am giving you these instructions is not an indication of my view as to which party you should find for in the case or whether any damages are appropriate at all. Instructions as to the measure of damages are given only for your guidance in the event that you should find in favor of Plaintiff in accordance with the other instructions that I have given you.

The purpose of the law is to make the plaintiff whole — to put the plaintiff in the same position she would have been in had there been no hostile work environment at Barton Chevrolet.

Thus, if you find that Plaintiff has satisfied her burden of proving by a preponderance of the evidence that one or both Defendants discriminated against her, only then may you consider the issue of what damages Defendants should pay Plaintiff. On the other hand, if you decide that Plaintiff is not entitled to prevail on her claims, you need go no further.

Similarly, if you find that Plaintiff has satisfied her burden of proving by a preponderance of the evidence that one or both Defendants retaliated against her, only then may you consider the issue of what damages Defendants should pay Plaintiff. On the other hand, if you decide that Plaintiff is not entitled to prevail on her claims, you need go no further.

I remind you that Plaintiff has brought six claims: and you must render your verdict as to each claim. Plaintiff has brought four claims against Barton Chevrolet as follows:

• discrimination under Title VII (the federal law);

• retaliation under Title VII (the federal law);

• discrimination under the State Human Rights Law (the state law); and

• retaliation under the State Human Rights Law (the state law).

Domingues also has brought two claims under state law against Ron Barton, the sole owner of the car dealership, under the state law: one for discrimination and one for retaliation.

You must render a verdict on each claim and, on the claims where you find Plaintiff has proven her case by a preponderance of the evidence, calculate the amount of damages for each of those claims.

4 Modern Federal Jury Instructions, Inst. 77-01 (2007), as modified; O'Malley, Vol. 3C § 74.02, § 171.90, as modified; 42 U.S.C. Section 2000-5(e); N.Y.C. Admin. Code § 8-502(d). Albemarle Paper Co. v. Moody, 422 U.S. 405, 417-18 (1975); Carrero v. New York City Hous. Auth., 890 F.2d 569, 579-81 (2d Cir. 1989); Watson v. E.S. Sutton, Inc., No. 02 Civ. 2739, 2005 WL 2170659 at *16 (S.D.N.Y. 2005); Koyen v. Consol. Edison Co., 560 F. Supp. 1161, 1164 (S.D.N.Y. 1983); Sogg v. Am. Airlines, Inc., 193 A.D.2d 153, 163, 602 N.Y.S.2d 21, 24 (1st Dept. 1993).

**JURY INSTRUCTION 35: LIABILITY OF INDIVIDUAL DEFENDANT**

I remind you that under the State law (in this case the New York State Human Rights Law). and only state law, an owner of an entity may be held individually liable under the Human Rights Law, provided the owner has the power to do more than carry out personnel decisions made by others. Courts evaluating the role of the owner have considered the owner may be held individually liable if the owner had "power of dismissal over the employee," and/or the "power to control the employee's conduct…." and that he actually participated in the retaliation.

> Patrowich v. Chemical Bank, 63 N.Y.2d 541, 542 (1984). Cater v. New York, 316 F. Supp. 3d 660, 674 (S.D.N.Y. 2018) (internal quotation marks omitted). Doe v. Bloomberg, L.P., 36 N.Y.3d 450, 167 N.E.3d 454, 143 N.Y.S.3d 286 (2021).

**JURY INSTRUCTION 36: REASONABLE DAMAGES**

The burden of proof to show that damages were sustained is on the Plaintiff. Plaintiff must prove the nature, extent, duration and consequences of the damages she sustained by a preponderance of the evidence. You may not speculate, guess, or infer damages. Damages must be reasonable and based upon the evidence before you. You are not to award to Plaintiff speculative damages; that is, compensation for damages that, although possible, are remote, conjectural or speculative.

If you should find that Plaintiff is entitled to a verdict on one or more of her claims, you may award Plaintiff only such sums as will reasonably compensate her for the damage you find she has sustained as a direct cause of either or both Defendants' actions or inaction.

> Rojas v. Manhattan Jeep Eagle, No. 97-9009, 1998 U.S. App. LEXIS 12677, at *2 (2d Cir. Apr. 20, 1998); Whittlesey v. Union Carbide Corp.,742 F.2d 724, 729 (2d Cir. 1994); Dunlap-McCuller v. Riese Org., 980 F.2d 153, 159 (2d Cir. 1992).

**JURY INSTRUCTION 37: EMOTIONAL DISTRESS DAMAGES**

Plaintiff here is seeking compensatory damages (also called emotional distress damages) based on her emotional pain and suffering, including feelings of depression anxiety and/or humiliation she has suffered as a resolve of Defendants' conduct. Domingues can prove this through her own testimony and the testimony of her friends and family. You may award such compensatory damages only for injuries plaintiff proves were caused by defendant's allegedly wrongful conduct.

> 3C Fed. Jury Prac. & Instr. § 171:90 (6th ed.), 3C Fed. Jury Prac. & Instr. § 171:90; L. Sand et al., 4 Federal Pattern Jury Instructions, 87-33; 42 U.S.C. §1981(A)(b)(3); Patrick S. Brady v. Wal-Mart Stores, Inc., 531 F.3d 127 (2d Cir. 2008); Lore v. City of Syracuse, 670 F.3d 127 (2d Cir. 2012); Turley v. ISG Lackawanna, Inc., 774 F.3d 140 (2d Cir. 2014) Osorio v. Source Enterprises, Inc., No. 05 CIV. 10029 (JSR), 2007 WL 683985, at *5 (S.D.N.Y. Mar. 2, 2007); Cross v. New York City Transit Auth., 417 F.3d 241 (2d Cir. 2005); Thorsen v. Cty. of Nassau, 722 F. Supp. 2d 277 (E.D.N.Y. 2010); New York City Transit Auth. v. State Div. of Human Rights, 78 N.Y.S.2d 207, 216, 573 N.Y.S.2d 49, 54 (1991); Sogg v. Am. Airlines, Inc., 193 A.D.2d 153, 163, 603 N.Y.S.2d 21, 27 (1st Dept. 1993), motion for leave to appeal denied, 83 N.Y.2d 754 (1994).

**Plaintiff wants the following added:**

*You may consider Domingues's testimony and other evidence as to any emotional harm and upset resulting from her claims of being sexually harassed, defendants' actions in responding or not, and any evidence about any emotional harm from any retaliatory harassment  You may also consider any emotional harm growing out of Domingues's transfer to the Service Building and the performance of her tasks in that position, including her testimony as to the change in job duties and their strenuous nature.*

*You may award damages for any pain, suffering or mental anguish that plaintiff experienced as a consequence of defendant's allegedly unlawful act. You may consider examples of what you evaluate to be emotional harm, including any evidence of tearfulness, effects on sleep, family relationships and sociability, resulting fears or worry, anxiety, anger, chest pain, panic attacks, sleeplessness, nightmares, and other types of reactions about which you may have heard testimony. No evidence of the monetary value of such intangible things as pain and suffering has been, or need be, introduced into evidence. There is no exact standard for fixing the compensation to be awarded for these elements of damage. Any award you make should be fair in light of the evidence presented at the trial.*

*The damages that you award must be fair compensation – no more and no less. It may be difficult for you to arrive at a precise evaluation of actual damages for emotional harm from a violation of Title VII (the federal law) and from the state law (the NYS Human Rights*

*Law. Nonetheless it is necessary to arrive at a reasonable award that is supported by the evidence offered by the plaintiff.*

*There is no requirement that a claim of emotional distress be supported by proof of expenses, lost earnings, or specifically measurable damage. There is also no requirement that a claim of emotional distress be supported by evidence from a medical or mental health professional who treated the plaintiff.*

*In this case, Domingues has testified about treatment she has received from medical and mental health providers, and medications that she has taken to address her emotional harm. You may consider that treatment and taking any medication(s) in evaluating the existence and/or measure of emotional harm.*

*Domingues has also testified about a physical injury to her shoulder that she sustained after Defendants transferred her to work in the Service Building, and about the end of her employment after that injury. She does not claim and you may not consider any physical harm from the injury she sustained at work. Any damages for the physical injury or pain and suffering from that physical injury are not before you to determine.*

*On the other hand, you may consider any evidence Domingues has presented about the transfer to the Service Building Department, the alleged changes there, and the circumstances of the end of her employment, as well as to how those may have affected her thoughts and feelings in the year(s) after the end of her employment, it at all.*

*You may consider Plaintiff's claims for emotional harm that she states were caused by what occurred at the May 12 Incident, as well as during her employment when she states that she made a series of complaints about harassment by DiCresce before May 12 and other harassment after May 12. You may consider her upset from the Transfer to the Service Building and any change in duties that you may find occurred.*

*You may consider Domingues's testimony that she believes that her job duties changed because of defendants' retaliation, and that those duties became significantly more strenuous, as well as being performed in a filthy basement location. You may also consider Domingues's testimony that she badly injured her shoulder as a result of performing those more strenuous duties and that such a result caused her upset and emotional harm. You may consider such upset that she experienced because of the fact of sustaining that injury at work in the circumstances of her complaints in the months before and during the Transfer. You may consider that emotional harm and upset as it occurred during Domingues's employment, on the last day of her employment, and as it has occurred up to and until the present day.*

*You may not consider the condition of Domingues's shoulder or any other body part, any treatment for that physical injury, or the physical pain she may have experienced in her shoulder or anywhere else after the injury at work occurred.*

*If Domingues proves that the emotional injury she suffered extends into the future because she will continue to suffer as a result of Defendants' discriminatory and retaliatory actions, then the damages you award may compensate her for that future loss.*

*Even if you believe that Domingues is unusually emotionally sensitive and incurred greater emotional harm from the Defendants' discriminatory and retaliatory conduct than the harm that would have been by an "average" or less sensitive person, the defendants are responsible for the additional harm.*

*In determining the amount of any damages you decide to award, you should be guided by common sense. You must use sound judgment in fixing an award of damages, drawing reasonable inferences from the facts in evidence. You may not award damages based on*

*sympathy, speculation, or guesswork. On the other hand, the law does not require that plaintiff prove the amount of plaintiff's losses with mathematical precision, but only with as much definiteness and accuracy as circumstances permit.*

**JURY INSTRUCTION 38: BURDEN OF PROOF OF UNCERTAIN DAMAGES**

Defendants are only liable for the harms caused by their discriminatory and retaliatory conduct. If plaintiff establishes that she was harmed as a result of either or both Defendants' unlawful discrimination and/or retaliation, but you are unsure as to whether a particular aspect of the harm plaintiff suffered was caused by either of both Defendants' unlawful discrimination and/or retaliation, then the burden is on the defendant to establish that it was unlikely that its discrimination caused that aspect of the harm plaintiff suffered.

> Spitz v. Lesser, 302 N.Y. 490, 494 (1951); McKinnon v. Kwong Wah Restaurant, 83 F.3d 498, 506-07 (1st Cir. 1996); Northington v. Marin, 102 F.3d 1564, 1568 (10th Cir. 1996); Osorio v. Source Enterprises, Inc., No. 05 Civ 10029 (JSR), 2007 WL 683985, at *5 (S.D.N.Y. Mar. 2, 2007).

**JURY INSTRUCTION 39: PUNITIVE DAMAGES**

> Kolstad v. American Dental Ass'n, 527 U.S. 526, 527, 538 (1999);
> Brady v. Wal-Mart Stores, Inc., 531 F.3d 127, 137 (2d Cir. 2008);
> Farias v. Instructional Sys., Inc., 259 F.3d 91, 101 (2d Cir. 2001);
> Zimmermann v. Assocs. First Capital Corp., 251 F.3d 376, 385 (2d
> Cir. 2001); Osorio v. Source Enterprises, Inc., No. 05 Civ 10029
> (JSR), 2007 WL 683985, at *5 (S.D.N.Y. Mar. 2, 2007).

Defendants have offered no instruction whatsoever. Plaintiff would like the following restored:

*Christine Domingues also seeks an award of punitive damages. Punitive damages are awarded to punish a defendant for wrongful conduct. Their purpose is to deter others from engaging in similar wrongful conduct in the future. Punitive damages are intended to protect the community, and to be an expression of the jury's indignation at a defendant's misconduct. Their purpose is to deter the defendants and other from committing similar acts in the future.*

*In order to award Domingues punitive damages, you must first find in her favor on her claims for retaliation and/or discrimination under Title VII (the federal law). Punitive damages were not available under the State Human Rights Law at the time of these events. This means that the punitive damages awards, if any, are only available against Barton Chevrolet. You may, of course, consider the role of Ron Barton in this context in light of his actions as an agent of Barton Chevrolet and as you consider the amount of punitive damages, if any, to award against Barton Chevrolet. However, there can be no punitive damages award against Ron Barton individually, but only against Barton Chevrolet.*

*As with compensatory damages, the fact that I am instructing you on punitive damages is not any indication of my view as to what your verdict should be, or on whether punitive damages should be awarded. It is entirely up to you to decide whether – under my instructions – punitive damages should be awarded in this case.*

*Christine Domingues seeks punitive damages under Title VII. Punitive damages may be awarded based on a violation of this statute if you find that Domingues has shown – by a preponderance of the evidence – that Defendant Barton Chevrolet engaged in intentional discrimination and acted with malice or reckless indifference to Domingues's rights under these statutes.*

*A defendant can be found to have acted with malice or reckless indifference to a plaintiff's rights where it knew that its conduct violated the law prohibiting discrimination, or acted with reckless disregard of the law. Direct evidence that a defendant acted with knowledge that its conduct violated the law is not required, however. Instead, the requisite state of mind may be inferred from the circumstances. For example, company policies or training in sexual harassment is sufficient to allow you to infer that defendants acted with malice.*

*There is no exact rule by which to determine the amount of punitive damages. You may fix such an amount as you find, in your sound judgment and discretion, the character of defendant's unlawful conduct calls for.*

*An employer may be held liable for punitive damages based on an employee's malicious or reckless indifference to a plaintiff's rights where (1) the employer authorized the*

*employee's acts; (2) the employer was reckless in employing that employee; or (3) the employer ratified or approved the employee's acts.  An employer ratifies an act where it confirms an act committed by an employee.  An employer may also be held liable for punitive damages based on an employee's malicious or reckless indifference to a plaintiff's rights where the employee was employed in a managerial role and was acting within the scope of his or her employment.*

**JURY INSTRUCTION 40: AMOUNT OF PUNITIVE DAMAGES**

In determining the amount of punitive damages to award Domingues from Defendant Barton Chevrolet. you must keep in mind that punitive damages are not intended to, and may not be used to, compensate her for her injuries. Instead, the purpose of punitive damages is to punish a defendant and to deter similar conduct in the future. Accordingly, if you award punitive damages, you should consider Barton Chevrolet's net worth and the impact of paying that award. A punitive damages award should be limited to the amount reasonably necessary to achieve the goals of punishment and deterrence and should not be so high as to result in the financial ruin of the Barton Chevrolet. Moreover, any award of punitive damages must bear a reasonable and proportional relationship to Domingues's actual injury and the compensatory damages you awarded her. The same applies to determining the amount of punitive damages to award from Defendant Ron Barton.

In calculating a punitive damages award, you should consider, among other things,

(1) the nature and reprehensibility of the Defendant's conduct, including the character of the wrongdoing and the Defendant's awareness of what harm the conduct caused or was likely to cause;

(2) the amount of time the Defendant engaged in reprehensible conduct; and

(3) the Defendant's financial condition and the impact your punitive damages award will have on the Defendant.

> 3C Fed. Jury Prac. & Instr. § 171:94 (6th ed.) (modified); TVT Records v. Island Def Jam Music Grp., 257 F. Supp. 2d 737, 745 (S.D.N.Y. 2003); Kauffman v. Maxim Healthcare Servs., Inc. , 509 F. Supp. 2d 210, 217 (E.D.N.Y. 2007) (citing BMW of N. Am., Inc. v. Gore, 517 U.S. 559, 580 (1996)); Osorio v. Source Enterprises, Inc., No. 05 Civ 10029 (JSR), 2007 WL 683985, at *5 (S.D.N.Y. Mar. 2, 2007).

Dated:  January 17, 2022

Respectfully submitted,

s/*Michael Ranis*___
MICHAEL RANIS
Co-Lab Goshen
45 St. John Street
Goshen, New York 10924
(914) 584-6445
 mranislaw@gmail.com

*s/Lisa Lipman*
Lisa Lipman
Attorney at law
145 Huguenot Street, Suite 402
New Rochelle, New York 10801
Tel: (914) 644-8400

ATTORNEYS FOR PLAINTIFF

s/*Jeremy Chylinski*
Jeremy Chylinski, Senior Counsel
GORDON & REES
  SCULLY MANSUKHANI
One Battery Park Plaza, 28th Floor
New York , NY 10004
P: 917-650-0050
jchylinski@grsm.com

ATTORNEYS FOR DEFENDANTS