UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------X
CHRISTINE DOMINGUES,                          :
                                              :
                          Plaintiff,          :     7:18-cv-7772 (PMH)
                                              :
              v.                              :     ***TRIAL MEMORANDUM***
                                              :
BARTON CHEVROLET CADILLAC,                    :
and RONALD BARTON,                            :
                                              :
                          Defendants.         :
                                              :
-------------------------------------------------------------X

### PLAINTIFF'S TRIAL MEMORANDUM

Plaintiff Christine Domingues submits this brief Trial Memorandum to address plaintiff's additional harassment claim against defendant on the basis of retaliatory animus by co-worker Lucy DiCresce, independent of her claims for sexual harassment. Plaintiff does so as related to its *Motion in Limine to Admit Statement*, as well as to the Joint Jury Charges to be submitted.

### FACTS

Domingues complained of DiCresce's sexual harassment in making repeated statements about the size of Domingues's breasts being so big and bouncy, culminating in DiCresce's poking one of Domingues's breasts with her hand. DiCresce was "shocked," however, that Plaintiff reported the touching because, according to DiCresce, Domingues was her friend and DiCresce was simply joking with Plaintiff.

Sometime after Domingues complained of DiCresce's sexual harassment, and after DiCresce was initially disciplined by defendants and sent home, DiCresce engaged in a pattern of more serious non-sexual threatening harassment.

After the latest May 12 complaint about the poking, DiCresce would walk by Plaintiff's office and call her "bitch" or "a fucking bitch" or "whatever she felt like calling [Domingues] that day" as she regularly passed Plaintiff's office to go out on her cigarette breaks; followed her into the bathroom and laughed at Plaintiff on at least four occasions), and on other occasions followed Plaintiff into the bathroom and stared at her. DiCresce also cornered Plaintiff during her cigarette break, telling Plaintiff she "need[ed] to grow the "F up," and "what the hell is [your] problem, "screaming and yelling."

Domingues felt that she was at significant risk of being harmed physically.  Her multiple complaints about DiCresce to several managers (Donald Mayer and Robert Milkovich) continued throughout May and the early summer of 2017.  Domingues was upset and went out to the dealership's service drive and yelled at Mayer to do something about DiCresce's harassment after the comment about being a "coffee nigger."

Domingues later made a complaint with the State police regarding having been touched sexually and feeling threatened, and a court entered an Order of Protection requiring DiCresce to remain at least 100 yards away from her, because of the threat of being further physically harassed.

It is undisputed that Domingues's multiple complaints resulted in the meetings with Ron Barton on August 9, 2017.  As a result of that meeting, it is also undisputed that Ron Barton moved Domingues to the Service Building from the Sales Building. According to Ron Barton, he moved Domingues because of safety concerns and the goal of keeping Domingues apart from her, particularly in light of the Order of Protection.

Plaintiff articulated a claim for retaliatory harassment by DiCresce both in the Complaint, and in her briefing in opposition to Defendants' Motion for Summary Judgment.

## ARGUMENT

In its Decision denying summary judgment, the Court was silent as to one claim made by plaintiff and part of its submission in its Memorandum in Opposition. Plaintiff does not seek to "over-read" that silence, but offers some potentially useful clarification about the claim – and plaintiff's burden.  The caselaw and argument here bears on plaintiff's above-mentioned *Motion in Limine*, as well as the jury charges submitted by the parties.

## I.  DICRESCE'S ACTS CREATED A RETALIATORYHOSTILE ENVIRONMENT

The above facts demonstrate that plaintiff may well prove the creation of a hostile environment by DiCresce – and not only on the basis of sexual harassment sufficient to create the hostile environment.  DiCresce's acts of intimidation, potential threats of physical menace, and cursing at Domingues *after* Domingues's multiple complaints about DiCresce support an additional and distinct claim.  They support the creation of a hostile environment by co-worker Domingues in the period from May 12

to the end of Domingues's employment based on a retaliatory motive – retaliating against Domingues for her protected activity and opposition to DiCresce's sexual harassment.

DiCresce's threats and acts of cornering her and disparaging her to her face made for difficult working conditions.  In making Domingues to feel physical unsafe and threatened, such created a hostile environment.  That that environment is based on retaliatory animus to harass Domingues, rather than a hostile environment on the basis of sexual harassment, is of little import.  DiCresce's made Domingues feel unsafe. Through those actions and comments, DiCresce created a hostile work environment motivated by her retaliatory animus for Domingues having complained on multiple occasions about DiCresce's harassment of her.  Such that that resulted in some discipline to DiCresce.[1]

The retaliatory acts and creation of a hostile environment – replete with Domingues's resulting fear – is all about DiCresce's superiority, including her potential to do harm

According to the caselaw, a jury should review the creation of a hostile environment – and whether that hostile environment and harassment is motivated by sex (in plaintiff's sexual harassment claim), animus to blacks (not here), or opposing unlawful discrimination and facing a stream of retaliatory acts by a co-worker.  This Circuit has observed that "one type of hostility can exacerbate" the effect of another.

---

[1] DiCresce's retaliatory *animus* is logically all the more likely because of her "shock" at Domingues's reaction and the fact that they were previously friends.

*Terry v. Ashcroft*, 336 F.3d 128, 150 (2d Cir. 2003). It follows that "hostile racial attitudes could have exacerbated the [effect] of retaliation-based . . . hostility and vice versa." *Id.*

As the Court already noted in its Decision denying Summary Judgment, the hostile environment claim should be evaluated to determine "whether a reasonable person who is the target of discrimination would find the working conditions so severe or pervasive as to alter the terms and conditions of employment for the worse." *Harris.*, 510 U.S. at 23.  "[T]he conduct complained of must be severe or pervasive enough that a reasonable person would find it hostile or abusive, and the victim must subjectively perceive the work environment to be abusive." *Raspardo v. Carlone*, 770 F.3d 97, 114 (2d Cir. 2014).

Whether an environment is "hostile" or "abusive" can be determined only by looking the "totality of the circumstances."  *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 23, 114 S. Ct. 367 (1993).  It is plaintiff's burden to establish such an abusive environment.

Plaintiff submits that the threats and actions of DiCresce were more than sufficient to alter the working environment for Domingues.  Both in their intensity, and continued over a longer time period after mid-May, she experienced an even more hostile and abusive work experience:  the threats, Domingues' fear of being stalked and confronted at every turn in the parking lot, caused significant fear and anxiety in the performance of her work duties and responsibilities.

Such was particularly acute during the period from May to the start of August when both worked in the Sales Building, and plaintiff worked in proximity to DiCresce, delivering coffee to the BDC unit.

*Richardson v. NYS Dept. of Correctional Serv.*, 180 F.3d 426, 446 (2d Cir. 1999) (co-worker retaliatory harassment consisted of: manure in plaintiff's parking space, hair in her food, a rubber band being shot at her, and scratches on her car); *Howley v. Town of Stratford*, 217 F.3d 141, 154-55 (2d Cir. 2000) (creation of safety hazards as supporting hostile environment); *Berkman v. City of New York,* 580 F. Supp. 226, 232-33 (E.D.N.Y. 1983), *aff'd,* 755 F.2d 913 (2d Cir. 1985)(analyzing sabotage of work by co-workers as creating a hostile and retaliatory environment, in conjunction with hazing and sexual statements, even if primarily making out harassment on the basis of sex).

The comment is in line with those components of retaliatory acts by co-workers that may appear less dramatic. *Wise v. NYC Police Department*, 928 F. Supp 355, 362-66 (S.D.N.Y. 1996) (finding retaliatory harassment where female police officer after she reported sexual harassment to a superior, all but five officers in the precinct stopped talking to her and that her supervisors also failed to speak to her or acknowledge her); *Spring v. City of New York,* 2019 U.S. Dist. LEXIS 55094 * 8-10 (S.D.N.Y. 2019) (retaliatory co-worker harassment consisted of: firefighters uniformly refused to extend the common workplace courtesy to him of exchanging shifts; defacing the plaintiff' firefighter's his work jacket; and loosening the nozzles on his mask).

## II. DEFENDANTS ARE LIABLE FOR THE RETALIATORY HARASSMENT

Liability for defendants can attach from Domingues's repeated complaints to her supervisors for protection from DiCresce, and the lack of any remedial action between the May 12, 2017 complaint and the August 9, 2017 meeting between Ron Barton and Domingues.  In addition to presenting facts here to prove the creation of the hostile and

abusive working environment, plaintiff must also prove that (2) that a specific basis

exists for imputing the objectionable conduct to the employer." *Alfano v. Costello*, 294

F.3d 365, 373 (2d Cir. 2002). "[A]n employer can be liable…where its own negligence is

a cause of the harassment.  An employer is negligent with respect to sexual harassment

if it knew or should have known about the conduct and failed to stop it.  Negligence

sets a minimum standard for employer liability under Title VII."  *Burlington Industries,*

*Inc. v. Ellerth*, 524 U.S. 742, 759, 118 S.Ct. 2257 (1998).

Employers can be liable for the "combatative" discriminatory "atmosphere" –

even without "intentionally fostering such an environment" – where it was not

"sufficiently forceful in quieting the atmosphere of racial harassment…" *Snell v. Suffolk*

*Cty*, 782 F.2d 1094, 1104 (1986). In reviewing co-worker harassment and derision, the

Second Circuit recognized the "duty on an employer who is aware" of a hostile

environment "to take reasonable steps to remedy it." *Id*.

Here, plaintiff at trial will present evidence of multiple complaints about

DiCresce's stalking her at work – whether following her to the bathroom, in the parking

lot, on a cigarette break, or calling her a "coffee N" when working in proximity where

one of Domingues's responsibility was to make coffee for the sales team.  She informed

several managers about the conduct, and her being fearful in the workplace, including

supervisors Don Mayer (DiCresce's direct supervisor), and her own supervisor Robert

Milkovich. [2]  She could do no more than make repeated complaints and most pointedly

---

[2] As directed, the parties will submit Joint Jury Instructions – containing only those about which the parties agreed.  This Trial Memorandum presents more detail and support for the plaintiff's version of Instructions, and defendants' potential liability for the retaliatory harassment by DiCresce.

when she followed Mayer to the parking lot and raised her voice about the harassment demanding action by Mayer and management to stop DiCresce

Certainly, defendant had **notice of the Order of Protection** against DiCresce and responsibility for enforcing it.  Though it may make much of considering that Order in taking action  after August 9, 2017, that is simply a disputed fact and motive in this case. More essentially, the evidence will show that it knew of the Order and of the continuing harassment, yet took no prompt remedial action to stop the stalking, threats, and other harassment.

As such, the facts and caselaw supports a jury finding against defendants because Domingues again kept Barton's managers apprised of DiCresce's retaliation in an ongoing way. And failed to provide prompt remedial action up to and after the August 9 meeting.[3]

## CONCLUSION

For the foregoing reasons, plaintiff requests the Court apply the burdens and caselaw to the facts plaintiff has presented about defendants' liability for the hostile environment created by co-worker DiCresce's retaliation.

DATED: New York, New York
         January 17, 2022

                                        Respectfully submitted,

                                        *Michael Ranis___*
                                        MICHAEL RANIS
                                        Co-Lab Goshen
                                        45 St. John Street

---

[3] Of course, plaintiff in no way concedes that in its being on notice as to the harassment and ultimately separating DiCresce and Domingues, that in doing so such meant that it did not retaliate against Domingues in its choice of assignment – the strenuous position in the Service Department location.

9

Goshen, New York 10924
(914) 584-6445
 mranislaw@gmail.com

ATTORNEYS FOR PLAINTIFF